## RAINES' ADM'R *vs.* RAINES' CREDITORS.

[ISSUE CONTESTING REPORT OF INSOLVENCY.]

1. *Declarations against interest.*—Where the creditors of an estate contest a report of its insolvency, and seek to establish for the decedent a partnership interest in a mercantile firm which was not included in the administrator's schedule of assets, the admissions of the decedent, to the effect that he was not a partner, are competent evidence for the administrator, as being against interest.

2. *Injury presumed from error.*—Injury will be presumed from the erroneous exclusion of evidence, unless the bill of exceptions sets out all the evidence, and thereby shows that no injury could have resulted from the error.

3. *Affidavit of insolvency, and issue thereon.*—An affidavit, appended to an administrator's report of insolvency, to the effect "that the facts stated in the foregoing petition and report he believes to be true," is not, it *seems*, a substantial compliance with the requisitions of the statute, (Code, § 1831;) but the defect in such affidavit is waived by taking issue on the report.

4. *Contents of report of insolvency*—If the decedent was a member of a mercantile partnership, the report of insolvency should set out the extent of his interest, with schedules showing the assets and liabilities of the firm, so far as they can be learned by the administrator.

5. *Decree on trial of issue contesting report.*—Proof of the existence of assets not included in the administrator's report of insolvency, does not authorize the dismissal of his report and petition, unless such discovered assets are sufficient to show that the estate is solvent.

APPEAL from the Probate Court of Henry.

In the matter of the estate of Thomas Raines, deceased, which was reported insolvent by John J. Cassady, the administrator; which report was contested by the creditors of the estate. In the affidavit appended to the report, the administrator made oath "that the facts stated in the foregoing petition and report he believes to be true." The issue was submitted to the decision of the court, without the intervention of a jury; and the evidence adduced on the trial, as set out in the bill of exceptions, was as follows:

"Proof was made, on the part of the contestants, that the decedent claimed to be a partner in the store of A. & J. J. Cassady, in the presence of said J. J. Cassady, administrator as aforesaid, who admitted the same; that Alex. Cassady, one of the members of said firm, admitted the same fact on two different occasions, and told one of the witnesses that said decedent owned a half interest in said firm; that said Alexander and John J. Cassady frequently spoke of said decedent's interest in said store, and one of the reasons why his name was not used in the firm was the fact that he was indebted by judgment against him, as security, in Georgia; that said decedent informed another witness, in the presence of said J. J. Cassady, who admitted the same, that he was interested in said store to the amount of $2,700; that J. J. Cassady, at the decedent's burial, said that his estate would be worth $9,000 or $10,000; that said decedent, when asked by another witness, who did some work for said firm, to

whom he should charge the work, replied, to either of the Cassadys or himself, as they were all interested; and that the deceased, some two or three months before his death, offered to sell his interest in said store. Plaintiff objected to the admissions of Alex. Cassady, on the ground that he was not a party to this suit; but the objection was overruled by the court.

"Plaintiff proved, by two witnesses, that said firm was yet indebted to a large amount; and, by the clerk of said firm, that the firm had lost money, that all the goods purchased had been sold, that all its solvent debts, with few exceptions, had been collected, and that said Alex. Cassady had appropriated about 75 bales of cotton belonging to him individually, amounting to about $3,000, to the payment of said firm debts. This witness testified, on cross examination, that said firm purchased goods to about the amount of $20,000 or $25,000, and sold at an average profit of from 33 to 50 per cent.; and that the bad debts amounted to about $5,000. Plaintiff proved, also, that said decedent stated, previous to his death, that he had no interest in said firm, and assigned the bad management in conducting the same as a reason for not wanting an interest in it. The court ruled, that the declarations of the decedent, for or against himself, were illegal, unless made in the presence of one of the members of said firm; to which ruling plaintiff excepted."

"Upon this testimony, the plaintiff asked the court for a decree in his favor"; which the court refused, but dismissed the petition and report, because the decedent's interest in said firm was not included in the report; and an exception was reserved to the decree.

All the rulings of the court, to which exceptions were reserved, are now assigned as error.

MARTIN, BALDWIN & SAYRE, for appellant.

PUGH & BULLOCK, contra.

STONE, J.—In excluding the evidence of admissions made by the intestate, to the effect that he was not a partner in the firm of the Cassadys, we think the probate

court erred. At the time the admissions were made, they were probably against the interest of the intestate. If a controversy had sprung up, during the life of Mr. Raines, between him and the Cassadys; and the question had arisen, whether he, Raines, was a partner, those admissions would have been clearly competent evidence, if offered against Raines. The contesting creditors, in this case, can only subject to their debts whatever interest Mr. Raines had in the partnership effects, after the payment of the partnership liabilities; and hence his admissions, made during his life, are, in this controversy, admissible on the question, whether or not he was a partner. What weight the court trying the case would accord to them, would depend on the circumstances under which they were made, taken in connection with the other evidence in the case.

If it be true, as contended, that Mr. Raines was embarrassed by judgments in the State of Georgia, and therefore he desired to conceal the fact of his alleged interest in said partnership, this may be an argument against the sufficiency of the evidence, while it fails to establish its incompetency.

It is here contended, that the exclusion of this evidence was, if an error, without injury to the appellant; that the testimony stated in the record abundantly proves the partnership between Raines and the Cassadys; that the existence of this partnership proves the administrator's report of insolvency to be false; and that hence the probate court rightly refused to decree the estate insolvent. Before we could legitimately reach the conclusion we are asked to draw, it would be an indispensable prerequisite, that all the facts on which the judgment below was pronounced should be brought before us.—See Frierson v. Frierson, 21 Ala. 549. Here, the bill of exceptions does not purport to set out all the evidence; and in such case, we cannot presume there was no other evidence before the court. We have repeatedly held the doctrine last above stated, as a reason for affirming judgments.—See Doe, *ex dem*. School Commissioners v. Godwin, at the present term, and authorities cited. We think the prin-

ciple rests on a basis equally impregnable, when we are asked to draw the conclusion that an admitted error has wrought no injury.

The error above named must work a reversal of this case; but, as the questions presented by the record will probably arise on another trial, we propose to lay down rules for the future government of the case.

If the question were properly presented for our consideration, it is probable the affidavit to the report of insolvency is insufficient.—See Code, § 1831. But the issue formed on the report is a waiver of this defect.

We think the probate judge mistook, to some extent, the character of the issue to be passed on. The real issue was, the insolvency of the estate, *vel non.* This should have been the controlling inquiry. If the assets were insufficient to pay the debts of the estate and expenses of administration, then it was the duty of the judge to declare the estate insolvent.—Code, §§ 1828 to 1838 inclusive.

Section 1830 of the Code prescribes what the report shall contain; and it is the duty of the administrator to comply with its terms. If the intestate was a member of the firm of the Cassadys, then it was clearly the duty of the administrator to set out the extent of his intestate's interest in said partnership, with schedules, showing its assets and liabilities, as far as the same could be learned by him. In this case, if the administrator was a copartner, he was probably in possession of the information, necessary to enable him to make correct schedules. If there were any partnership assets over and above the partnership liabilities, such surplus effects became assets for the payment of the intestate's individual debts. Smith v. Mallory, 24 Ala. 628; Bridge v. McCullough, 27 Ala. 662.

It being the duty of the administrator to submit, with his report, full statements of the personal and real assets, together with the liabilities, the inquiry arises, what penalty shall be visited on him, if he fail to comply with this duty? The substance of the issue in this case was, an averment by the administrator that the estate was insolvent, and a denial of the truth of that averment by the

contesting creditor. Under this issue, the judge was not authorized to dismiss the administrator's report, on ascertaining that certain assets were left out of his schedules; unless such discovered assets left the insolvency of the estate unsustained by the proof.—Rugely & Harrison v. Robinson, 19 Ala. 496.

While the law should deal indulgently with an honest administrator, who had, through forgetfulness or misapprehension, omitted to make his schedules full; a harsher judgment should be pronounced on such omission, if done willfully, or for corrupt ends. That there is no remedy in such case, we will not say. All we decide is, that it would not, in either phase, justify the judgment pronounced on the issue in this case.

The judgment of the probate court is reversed, and the cause remanded.