ABRAHAM & BROTHER *vs.* NUNN.

[TROVER FOR CONVERSION OF COTTON.]

1. *Trover; when it will not lie.*—Trover will not lie where goods are taken by an armed force, without any negligence or complicity on the part of the bailee.
2. *A charge calculated to misled not reversible error.*—A case will not be reversed in this court because the charge of the court below may have misled the jury, and such was its tendency, because the party excepting could have asked a charge which would have explained or qualified the charge given, so as to have obviated its tendency.
3. *Evidence; declarations of third persons.*—The admission as evidence against objection, of the declarations of officers of the United States made to a witness, is illegal, and is a reversible error, unless all the evidence is set out in the bill of exceptions, and it clearly appears from the record that no injury resulted therefrom to the party excepting.

APPEAL from the Circuit Court of Autauga.
Tried before the HON. JOHN MOORE.

This action was brought by J. Abraham & Brother partners, against Theodore Nunn, to recover damages for the conversion of three bales of cotton, and was commenced on the 30th day of April, 1866. No pleas are found in the record, and it does not appear that any were filed.

DeBardlaben, a witness for the plaintiff, "proved that the defendant, as warehouseman, received of one Hall three bales of cotton in 1863; that Hall transferred to plaintiffs the receipt given by defendant for the cotton in 1863. The receipt was in the usual form of warehouse

receipts, deliverable on production of said receipt and request.'" Said witness also testified "that a man who represented himself as agent of the ·U. S. Treasury came with an armed force and took possession of about two hundred bales of cotton in the warehouse of defendant; that witness went to Montgomery and saw Mr. Clapper, the U. S. Treasury agent there, and asked him if the man with the armed force had authority to take cotton alleged to belong to the Government. He was informed by said Clapper that the said man with the armed force had authority from him to take the cotton in the warehouse of defendant." To the said declarations of said Clapper, made to the witness, plaintiff objected, and the court over-ruled the objection and permitted said declarations to go to the jury, and the plaintiffs excepted. The testimony showed that the taking of the cotton was before the 20th July, 1865, and whilst the military had possession of the State. The same witness also said "he went to Gen. A. J. Smith, who was in command of the United States forces in this part of Alabama, and asked him whether the man with the armed force was a treasury agent, and said Smith answered 'he was;' and to this answer of Smith the plaintiffs objected, and the objection was overruled and plaintiffs excepted."

The testimony, as the bill of exceptions states, "tended to show that the defendant refused to deliver the cotton in his warehouse to the man with the armed force, until he was informed by the said Clapper, United States Treasury agent, and by General Smith, that the said man, who was named McDonald, had authority to seize said cotton. The defendant was introduced as a witness, and proved that all of his own cotton, fifty or sixty bales, "had been taken from said warehouse by an armed force, against his consent and protestation; and that all the cotton in his warehouse, except ten or eleven bales, which was claimed by one Greenwood, was taken away by said armed force." It was also proved that defendant "had used every diligence and care in his power to preserve the cotton committed to his care; that he had used none of it, and had not permittrd it or any part of it to be used." There was

evidence tending to show "that the marks on the cotton and the heading had been torn or worn off." "On this evidence the court charged the jury that, in order to make the defendant liable in this action, they must be satisfied from the evidence that the defendant had converted the cotton to his own use, or had in some way actually done something to injure or destroy the plaintiff's cotton; that mere want of care, if it was proven, would not make him liable in this action;" and to this charge plaintiffs excepted, and appealed to this court, and assigned as error the admission as evidence of the declarations of officers of United States and the charge given.

RICE, SEMPLE & GOLDTHWAITE, for appellants.—This is an action of trover brought by bailor against bailee, for the conversion of cotton, which, by the terms of the bailment, were to be delivered to the bailor on request—the terms of the bailment being shown by the warehouseman's receipt in writing.

In the language of this court, "this *undertaking imposed upon him* (the warehouseman, the defendant,) the duty to deliver it (the cotton) up on demand, or excuse the non-delivery. If he suffered a third person to *take it* from his possession, or if he *acquiesced* in such *removal*, he would in either case be chargeable as for a *conversion*, unless *he* could show that the person thus taking it had *the superior title*."—*Spence v. Mitchell*, 9 Ala. Rep. 748.

Any violation of the terms of the bailment by the bailee by any *positive act* injuring or destroying the cotton, would make him liable either in trover or trespass *vi et armis*, at the election of the plaintiff. But a violation of the terms of the bailment, or of any *duty thereby imposed* upon him, by *mere omission* to do what the terms of the bailment required of him, is, beyond doubt, a conversion, for which trover may be maintained.—*Spivey v. The State*, 26 Ala. Rep. 90; *Wilkinson v. Moseley*, 30 Ala. Rep. 562; *Hall v. Goodson*, 32 Ala. Rep.; *St. John v. O'Connell*, 7 Porter's Rep. (12th head note) 467, 480.

If, before demand and refusal, the defendant had acquiesced in the removal of the cotton by third persons, he

was thereby guilty of *a conversion*, and a demand and refusal was unnecessary. But if not previously guilty of a conversion, his failure to deliver on the demand—especially on the particular ground set up at that time by him, that others had taken it by force—was *prima facie* a conversion, or evidence of a conversion. His declarations at the time can not do him any good—*Mahone v. Reeves*, 11 Ala. Rep. 345 ; 7 Porter, 474.

2. All the legal implications and incidents of a written contract form part and parcel of the written contract as fully as if written out *in extenso* in the contract.—*Nave v. Berry*, 22 Ala. Rep. 382.

It must be kept steadily in mind, that the obligations and duties of the defendant result from *his own valid contract.*—*Claney v. Overman*, 1 Dev. & Batt. Law Rep. 405. He cannot therefore rely upon ignorance. Nor is his *motives* a material subject of inquiry. Nor can he find any legal excuse in his honest, but mistaken *belief of the right* of those armed third persons by whom he says the cotton was taken from him, and *in whose taking he acquiesced*, through a mistaken but honest belief of their right to take it.—*Ritchie v. Atkinson*, 10 East, 530.

As his duties and obligations are *self-incurred*, and arise from his own contract or undertaking, and as one of those obligations and duties was to deliver the cotton to the holder of his receipt (the plaintiff) on request, and as he has failed, on demand and request to do so, the single fact that the cotton was taken by third persons from him, which taking it is plain he in fact *acquiesced in*, cannot bar this action. Nor can the taking by any third person from him, be a defence to this action, unless *he* shows that those who so took it had " *the superior title* " to the cotton, or at least *such lawful* authority to take it as would not leave them liable to him.—*Spence v. Mitchell, supra.* For it is only when he " *has no remedy over* " against the persons who took it, that the law will excuse him from *the obligations of his contract.*—*Clancy v. Overman*, 1 Dev. & Batt. Law Rep. 405. He fails to show that *he had no remedy over ;* the contrary tends to show he had.—*Davis v. Smith*, 15 Missouri Rep. 467.

3. The charge of the court ignores each and all of the foregoing views. It was *too exacting* of the plaintiff. It required him to prove far more than *the law* required him to prove, "*to make* the defendant liable." It kept *the burthen of proof* steadily on the plaintiff, after he had made out a *prima facie* case. It made the case turn upon matters which were not the matters upon which *the law* required the case to turn. It could not fail to mislead the jury to the prejudice of the plaintiff. It required the plaintiff not only to prove the defendant guilty of *a conversion*, but a conversion *to his own use*; that is, a conversion whereby the defendant made or acquired some benefit.

4. Bailees, like the defendant, are guilty of a conversion, whenever they "have *transcended the authority conferred by their contract.*"—*St. John v. O'Connell*, 7 Porter's Rep. 480.

The defendant clearly "*transcended the authority conferred by his contract*," when he assumed to himself the right, upon the mere declarations of third persons, to decide, that the "armed force" claiming the cotton had authority to take it, and yielded it to that armed force, and acquiesced in the removal of the cotton by the armed force. Neither the plaintiff nor the contract authorized any such decision or surrender by the defendant. The plaintiff never, by the contract *or otherwise,* consented for his cotton to be transferred or turned over by the defendant to any *third persons*, whether armed or unarmed. Nor can he be *forced* by any such act, to seek redress of those to whom the defendant, *without his consent,* so yielded his cotton. It is for the defendant to seek his redress of those third persons; but he must respond to the plaintiff.

5. The declarations of Clapper and Gen. Smith are, in law and fact, the mere naked declarations of third persons. They are merely *narrative* of a past occurrence, to-wit : that Smith and Clapper *had, at a time prior to those* declarations, authorized the armed men, or force, to take the cotton. Those declarations are not part of any *res,* admissible in this case. They are palpably illegal evi-

dence against *the plaintiff.*—*Cunningham v. Cochran*, 18 Ala. Rep. 479 ; *Thompson v. Mawhinney*, 17 Ala. Rep. 362.

6. Whether defendant acted prudently or honestly, is not a material inquiry in this case. The question was, did he, as bailee, transcend his authority—did he violate the terms of the bailment either by mere *omission* or otherwise.—*Ritchie v. Atkinson*, 10 East, 530.

7. Trover is a proper action for the plaintiffs in this case, against the warehouseman, who delivered or surrendered the plaintiff's goods to another, although such surrender was the result of mistake. *The loss* of plaintiff's goods whilst in charge of the warehouseman, *as shown by the evidence*, to-wit : by the warehouseman yielding to their taking by another, is a conversion.—9 *Bacons' Abr.* 633, 636, *referring to* 4 *Bing.* 476, *and* 15 *Johns.* 39 ; *Devereux v. Barclay*, 2 Barn & A. 702 ; *Lubbock v. Inglis*, 1 Starkie's Cases, 104 ; Peake's Cases, 68 ; 1 Bing. 476.

Watts & Troy, *contra.*—1. The action is *trover* for the conversion of three bales cotton left with defendant as a warehouseman. The proof shows that no illegal ownership of the cotton was assumed by the defendant, and no wrongful or tortious act was committed in it ; and the evidence showed clearly that he had not converted the cotton to his own use; that it was taken from his possession in July, 1865, (whilst military rule was prevailing,) by an armed force, against his consent, and when demand was made for it by the owner, he had not the possession of it. Defendant was not liable in *trover* for the cotton.—See Edwards on Bailments, and the authorities he cites, page 117, and on page 130, and authorities cited ; *Ala. & Tenn. R. R. Co. v. Kidd*, 35 Ala. 220 ; *Johnson & Connor v. Allen & Reynolds*, 33 Ala. 515.

2. The declarations of the treasury agent Clapper, and of Gen. Smith, as to the authority of the man with the armed force (who took the cotton from the possession of defendant,) were competent evidence for the purpose of showing that defendant acted with prudence and caution in not resisting the *force.* The declarations tended to show that the man with the armed force was not a highway robber, because acting under the authority of govern-

ment agents. The defendant might have been guilty of want of proper care, had he not resisted a mere band of robbers. The declarations of Gen. Smith, and Clapper, the treasury agent, were therefore competent to show that the defendant was not in duty bound to resist by force the effort of this armed man to take the cotton from his custody and possession. These declarations were not introduced to prove the rightful authority of the armed man to take the cotton, but to show that the treasury agent and Gen. Smith, under whose orders he represented himself as acting, recognized his authority, and thus to show the reason why the defendant did not resist with force the seizure of the cotton.

3. But if there was an error in introducing these declarations, it was error without injury to the plaintiffs; for the proof clearly shows that the plaintiffs were not entitled to recover, *certainly in the form of action used.*

BYRD, J.—[1.] In the case of the *Ala. & Tenn. Rivers R. R. Co. v. Kidd,* 35 Ala. 220, this court held that " trover will not lie for goods lost or stolen by the negligence of a warehouseman." To this doctrine we adhere. Hence, trover will not lie where goods are taken by an armed force without any negligence or complicity on the part of the bailee. Construing the charge given by the court with reference to the evidence, we are of opinion that the court committed no error in giving it.—*Conner et al. v. Allen et al.,* 33 Ala. R. 516; Edwards on Bailm. 130; Story on Bailm. §§ 269, 408; *Devereux et al. v. Barclay et al.;* 2 Barn. & Al. 702 : 9 Bac. Abr. 636.

2. Admitting that the charge may have misled the jury, and that such was its tendency, still, this is not an error for which the cause would be reversed; for the party excepting could have asked of the court a charge which would have explained or qualified the charge given, so as to have obviated its tendency.—*Jones v. Fort,* 36 Ala. R. 449; *Fitzpatrick v. Hays, ib.* 684.

3. The appellants insist that the declarations of the United States officers as proven by the witness DeBarde-

4

laben, were inadmissible, and that the court erred in permitting them to go to the jury. It is said by the counsel for appellee, with great force, that as the appellants are not entitled to recover in this action under the evidence set out in the record, that the admission of such declarations is, at most, error without injury. But the admission of this evidence was illegal, and being so, it devolves on the appellee to show that the appellants were not injured thereby. In *Raines' Adm'r v. Raines' Creditors*, 30 Ala. 428, this court held that injury will be presumed from the erroneous exclusion of evidence, unless the bill of exceptions sets out all the evidence and shows that no injury could have resulted from the error. The same principle, we conceive, applies to the erroneous admission of illegal evidence when an exception is reserved to the ruling of the court thereon. But we do not hold that this is a universal rule. The bill of exceptions in this case does not purport to set out all the evidence, and the evidence objected to is clearly illegal. In the case of *Carlisle v. Tuttle and Wife*, 31 Ala. 614, the court held that the erroneous admission of evidence by the probate court is not a reversible error, where the bill of exceptions, setting out all the evidence, shows enough to sustain the decree of the court. So where there is such an error committed in a trial by jury, it would seem to follow that, to obviate a reversal, all the evidence should be set out and show that no injury resulted to the party excepting. The rule is laid down somewhat more stringently in the case of *Shield & Walker v. Henry & Mott*, 31 Ala. 53. In *Green v. Allen, administrator*, 32 *ib.* 220, it does not appear that all the evidence was set out in the bill of exceptions, yet the court held the evidence admitted could not possibly have injured the party excepting. This case *may*, perhaps, be considered one of the exceptions to the general rule above laid down.

In *Buford v. Gould*, 35 *ib.* 268, it is held that an erroneous ruling will be presumed injurious, unless the bill of exceptions affirmatively shows that such error worked no injury. In that case it appears the court refused to suppress certain depositions, and an exception was taken. But the bill of exceptions did not show that the deposi-

tions were offered as evidence or were not so offered; and the court reversed the cause on this exception. In *Moseley v. Mastin*, 37 *ib.* 216, it was said in the opinion that the court below " erred in sustaining specific objections which were made; and we cannot affirm that it was error without injury, because there was another objection which might have been made, and which, if made, might have been obviated." See, also, *Murphree v. Singleton*, 37 *ib.* 412. In *Stephens v. Broadnax et al.*, 5 Ala. 258, it was held that where it is stated in the bill of exception that a charge was prayed upon certain evidence, it will not be intended, in order to legalize the ruling of the court, that other evidence was introduced which would render it legal; and being illegal the law presumes injury, and it will not be intended in order to rebut the presumption of injury that other evidence was adduced which would have done so; nor, on the other hand, can we say no injury resulted, unless all the evidence had been set out in the bill of exceptions, although we might be satisfied that no injury resulted, if we were allowed to look alone to the evidence that is set out. There may be cases supposed, and some have been adjudicated in which a court could clearly see that no injury resulted from the introduction of illegal evidence without the bill of exceptions disclosing or having disclosed all the evidence introduced on the trial.

From the decisions of this court, the true rule seems to be that where *illegal* evidence is admitted in opposition to the objection of the party against whom it is offered, it is a reversible error, unless it clearly appears from the record that no injury resulted to the party excepting. And, as a general rule, the court will reverse in such a case, unless all the evidence is set out in the bill of exceptions.

It is not sufficient for the purpose of an affirmance in this case, that upon the evidence set out we cannot see any injury which resulted to the appellant from the admission of the declarations of the officers of the United States, but we should be able to see clearly that no injury resulted, which we are unable to do in the condition of

this record. Hence, the judgment is reversed and the cause remanded.

JUDGE, J., not sitting.