Hine v. Hussey, Adm'r.

---

## HINE *vs.* HUSSEY, Adm'r.

[MOTION AT A SUBSEQUENT TERM OF PROBATE COURT TO VACATE AND DECLARE VOID JUDGMENTS AND ORDERS RENDERED IN THE ADMINISTRATION OF THE ESTATE OF A DECEDENT BY A PRESIDING JUDGE WHO WAS A SON-IN-LAW OF THE ADMINISTRATOR.]

1. *Section 635 of Revised Code construed; what proceedings are voidable merely.*—The proceedings in a cause before a judge who is interested, or related to either party, or in which he has been of counsel, sitting without the consent of the parties entered of record, or put in writing, if the court is not one of record, are voidable only, and not void.

2. *Probate court, jurisdiction of, to order sale of decedent's real property; when attaches.*—The jurisdiction of the probate court to order the sale of a decedent's real estate attaches on the filing of a petition alleging a statutory ground of sale, and when acquired, the order of sale is not void.

3. *Insolvency of decedent's estate; proceedings to determine are in rem.*—Proceedings to declare an estate insolvent are *in rem*, and the jurisdiction of the court attaches on the report of insolvency made by the administrator   The decree, after jurisdiction obtained, is not void for irregularities.

APPEAL from Probate Court of Limestone,
Tried before Hon. JOSHUA P. COMANS.

THIS was an application by petition to the probate court, by the appellant, a creditor of the estate of John McDonald, deceased, to set aside, vacate, and declare null and void, the grant of letters of administration by said court to the appellee, and all the subsequent orders, decrees and

proceedings in the administration of said estate, particularly the order of sale of the lands and the decree of insolvency.

The grounds of the application are, that the presiding judge of the court, being at the time a son-in-law of Hussey, married to Hussey's daughter, who was then living and still his wife, had, while thus being related to said Hussey, appointed him administrator of said estate, &c., and rendered the decrees and made the other orders complained of in the administration of said estate, "without the consent of the parties entered of record, as required by law, as appears from the minute entries of said court," particularly to the entry of the 8th of November, 1866. This objection is urged to each and every order, decree and proceeding in the whole of said administration. This entry, so far as relates to the consent of parties, was as follows:

"McDonald, John; estate of. } This day came E. M. Hussey, Probate court of Limestone. } and prayed the court to grant him letters of administration on the aforesaid estate. And it having been requested by all the parties in interest that the probate judge should act, and declaring their wish in writing, the probate judge, John B. McClellan, being related to said E. M. Hussey, letters are hereby granted to said E. M. Hussey." * * [Here follows order appointing appraisers.]

On the minute book of the probate court appears a written consent of the widow, heirs and distributees, that the probate judge should act notwithstanding his relationship, dated December 1st, 1866. The petition alleges that this is the only written consent ever filed in the cause; that this is the written consent referred to in the order of November 8th, 1866, appointing Hussey administrator, and was not filed or written at said last date; that said written consent is of no avail, because John and Lizzie McDonald did not sign it, and because said Lizzie was a minor at that time, and had no general guardian, or guardian *ad litem.*

The petition alleges that the order for the sale of the land

belonging to said estate is void, among many other reasons assigned—1st, Because said land is not described in the application and petition ; 2d, Because no title was alleged in Hussey's petition, or proven, or otherwise shown to the court, in McDonald in his life-time, or in his estate since his death, in and to the lands ordered to be sold ; 3d, Because no guardian *ad litem* was appointed for the minor, Lizzie McDonald, or acted for her, &c., as required by law. 4th, Because the interrogatories, nor a copy thereof, propounded to the witnesses, whose answers thereto were read on the hearing of said application aforesaid, were neither shown to nor served upon the guardian *ad litem* of Lizzie McDonald, a minor, &c., ten days, or any other length of time, before commission issued to take and certify the answers, &c., as required by law.

The decree for the sale of the lands was as follows :

"Jonathan McDonald.     Be it remembered, that heretofore, to-wit, on the 1st day of October, 1867, came E. M. Hussey as administrator of said estate, and did file with the judge of this court his application in writing and under oath, praying an order to sell the lands belonging to said estate, on the ground that the same is necessary to pay the debts of said decedent, and the costs and charges of administration, and alleging an insufficiency of personal property therefor ; and this being the day regularly set for the hearing of said application, a day more than forty days from the filing of said petition, the court proceeded to hear and determine said cause. I find that due notice of said filing and said day for hearing has been given to all the parties defendant to said application, by citation duly executed on all the parties defendant, they being residents of the State of Alabama, and John Turrentine, duly appointed guardian *ad litem* to represent the minor heirs, accepting said appointment, and appearing in open court and denying the allegations of said application. I find from the proof taken by deposition as in chancery cases, that the allegations of said petition are correct ; that there is not sufficient personal property belonging to said estate to pay said debts, costs and charges. It is therefore ordered, adjudged and de-

creed, that the prayer of said petition be granted ; that lands described as follows : [Here follows order of sale and description of land by numbers, section, township and range, and terms of sale, &c., and reservation of five hundred dollars to the widow, &c., in addition to dower.] Given under my hand and seal, this 11th day of November, 1867.

(Signed)         JOHN B. McCLELLAN,
Judge, &c."

The petition for the sale of the lands does not appear in the record, although a minute entry of October 1st' 1867, shows that it was filed on that day.

The decree of insolvency is alleged in the petition to be void, among other grounds—1st, Because the administrator did not file, "with or without report of insolvency, a statement of the property and assets, and the estimated value thereof, as required by sections 1830 and 2179 of the Rev. Code ;" 2d, Because less than thirty days notice was given, &c.; 3d, Because notices required to be sent to creditors by mail were not sent ; 4th, Because the hearing of the report of insolvency was set for the third Monday in January, 1867, and the declaration of insolvency was rendered on the 13th, it being the second Monday of said month, and the notice published in the "Athens Post" notified creditors that the third Monday in December, 1867, was the day set to determine the report of insolvency, &c.

The report of insolvency by the administrator, Hussey, was as follows :

"To the Hon. J. B. McClellan, Judge, &c.:

Your petitioner, as the administrator of Jonathan McDonald, deceased, would respectfully represent unto your honor, that to the best of his, the said administrator's knowledge and belief, said estate is insolvent, as the accompanying list of the goods and chattels, evidences of debt, and other personal property and real estate, and in fact all the assets of said estate, and also a list of claims filed against said estate, will show ; schedule A showing assets, and schedule B the claims presented against the estate.

E. M. HUSSEY, Adm'r."

⁖ Accompanying it was a schedule showing assets of, and claims presented against, said estate. The petition was not sworn to.

A minute entry shows that the third Monday in January, 1868, was set for the hearing of the report of insolvency, and that the time set for the hearing, as published in the "Athens Post," was the third Monday in December, 1867. The decree of insolvency was rendered on the second Monday in January, 1868, and so far as material to an understanding of the case, is as follows:

"Jonathan McDonald, estate of. ⎱ This day having been Decree of insolvency.   ⎰ regularly appointed by the order of the judge of this court to hear and determine the report and statement of the insolvency of said estate, filed by E. M. Hussey, the administrator thereof, now comes said administrator, and moves the court to declare said estate insolvent; and the guardian *ad litem* regularly appointed, now in open court consenting to represent the minor heir in said proceedings; and the court being satisfied, from due examination and proof, that notice of the filing of said report, and of the day set to hear and determine the same has been given to the creditors in all respects as required by law, and directed by the former order of the court; the court thereupon proceeds to hear and determine as to said report, and none of the creditors contesting the correctness of said report, it is ordered, adjudged and decreed that said estate be, and the same is hereby declared insolvent." [Here follows order appointing day for a settlement by said Hussey of his administration, and the notice required to be given thereof.]

The court sustained a demurrer to the petition, and hence this appeal.

HOUSTON & PRYOR, and WM. RICHARDSON, for appellant. 1. A proceeding *in rem* is a proceeding against *the thing itself*, and not the person, and in such cases it is not necessary for the court to acquire jurisdiction of the persons of the parties.—*Lamar v. Gunter*, 39 Ala. 334.

A proceeding before the probate court to sell the real estate of a decedent, is settled by the Supreme Court of

Alabama to be *in rem*, and that in such cases jurisdiction of the persons of the parties is not necessary to sustain the validity of the decrees and orders of the court.—*Satcher v. Satcher's Adm'r*, and the authorities therein cited.

2. The settlement of estates of decedents by executors and administrators, settlement of guardianships, reports of insolvencies of estates of decedents, and the proceedings thereon, are proceedings *in personam* or *inter parties*, and in all such proceedings and all other suits or proceedings, *inter parties*, the *courts must acquire* jurisdiction of the persons of the parties, as well as of the subject matter, otherwise their action will be void.—12 Ala. 823 ; 5 Pick. 219 ; 14 Mass. 222 ; 30 Ala. 83 ; 28 Ala. 332 ; 39 Ala. 150 ; 34 Ala. 165 ; 4 Pet. 472 ; 15 Pet. 119 ; 14 Pet. 150 ; 1 Hill, 128, 139, 140, 141, 142 ; Mass. 510 ; Shep. Dig. § 11, p. 615.

3. A void proceeding may and will be reversed on appeal, as well as for a mere reversable error—that accomplishing all the appellant desires—but which might and would have been declared void upon proper application to the court. A notice amounts to nothing, and is worth nothing, except to bring a party into court—give the court jurisdiction of his person. It is intended as a substitute for " and the equivalent of personal notice, and nothing less than the statute has prescribed can be a legal constructive notice."—*Frierson v. Travis, supra.*

4. In the case before the court, there was no notice to the creditors, and none of them were before the court at the time of rendering the decree of insolvency. The court had not acquired jurisdiction of the persons of the creditors, and parties interested in the matter before the court, and its orders and decrees as to them are void.

On the filing of the alleged report of insolvency, as shown by the record, the court made an order setting the third Monday in January, 1868, to hear and determine upon the matter and prayer of said report, and notice thereof was ordered to be given to the creditors, as set forth in said order. And, as further shown by the petition and record, and as admitted by the demurrer, no notice was given to the creditors, or any one else, of the day thus set (that is, the third Monday in January, 1868,) for the

hearing of the matters of said report; but instead of giving the notice, ordered by the court and required by the law, of the day thus set, a notice was given, as shown by the record and admitted by the demurrer, stating that the said probate court would hear and determine upon said report on the third Monday in December, 1867, one month sooner than the day set by the court's order, and in direct conflict with the order. And as no other notice was given or published, which the demurrer admits, then the undersigned feel warranted in saying that no notice was given in any way. A notice illegally given is no notice at all.

But further, as shown by the record and admitted by the demurrer, the said report of insolvency was not taken up by the court of probate, either on the third Monday in January, 1868, or on the third Monday in December, 1867, but the same was taken up by the court on the second Monday in January, 1868, a day not set for the hearing of said report of insolvency, and one on which no notice had been given; and on that day, and without notice to any person or party, said court heard the matters of said report, and then and there decreed and declared the said estate of said McDonald to be insolvent; which, we respectfully submit, was void. As well might the probate court (for all purposes of fairness and justice,) have made and rendered its decree of insolvency the next day, or the next hour, or the same hour, of the reception of the report of insolvency. 2 Ala. 164; 39 Ala. 150; 16 Ala. 693.

6. It is argued that the recitals of facts in the minute entries are conclusive, and cannot be contradicted. We submit that such is not the law, and illustrate thus: In this case, the recitals in one minute entry conflict with those in another. Also, the report of insolvency contains and shows one state of facts, while the recitals in the minute entry as to what the report contains, state another and different state of facts. Which shall prevail? We think the report speaks for itself; being a part of the record, its allegations will override the recitals. And so of other convicts. Recitals make a *prima facie* case, but not being in truth the record, they may be explained or contradicted by over evidence. Such is the decision in the case of *Hard v.*

*Shipman,* 6 Bar. Supreme Court Reports, 625; *Heydenfeldt v. Towns,* 27 Ala. 431 ; *Bogia v. Darden and Wife,* 41 Ala. 322 ; *Sowell v. Sowell's Adm'r,* 41 Ala. 357.

7. In the case of *Hard v. Shipman, supra,* the supreme court of New York say, on page 623, Bar. Sup. Court. Rep., " the want of jurisdiction may always be set up against a judgment of a court, whether of general or of special and limited jurisdiction, whenever such judgment is sought to be enforced, or any benefit is claimed under it. To give any binding effect to a judgment, it is essential that the court should have jurisdiction both of the person and the subject matter ; " and on page 624, in the same case, " the . jurisdiction of a court, whether of general or of limited jurisdiction, may be inquired into, although the record of the judgment states facts giving it jurisdiction. The record is never conclusive as to the recital or statement of a jurisdictional fact, and the defendant is always at liberty to show a want of jurisdiction, although the record avows the contrary. No court or officers can acquire jurisdiction by the mere assertion of it, or by falsely alleging the existence of facts on which jurisdiction depends.—5 Hill, 168. If the court had no jurisdiction it had no power to make a record ; and the supposed record is not in truth a record. If not a record it cannot impart absolute verity."—See authorities cited. The case of *Noyes v. Butler,* 6 Bar. 613, sustains very fully the above propositions, and we especially ask attention to it and the authorities cited.

8. The case of *Hamner v. Mason,* 24 Ala. 480, is relied upon to establish the conclusiveness of recitals. A full and conclusive answer to that case, is to be found in the fact that in *Heydenfeldt v. Towns,* and *Sowell v. Sowell's Adm'r, supra,* the court decide otherwise, and we might well afford to rest the argument on those cases. But, in fairness to the court, as well as to ourselves, we submit that those cases do not stand upon precisely the same principles, as will be seen at once upon examination of the cases. The case of *Hamner v. Mason* turned upon the fact of the giving of a new bond by a guardian, and the probate judge being the officer, and the only person authorized by law to take and approve such bonds, and such action by him be_

ing, and required by law to be, preliminary to a discharge of the former bond, devolved upon the judge to try and decide that question, (of the taking of the new bond,) before he could discharge from the old one ; and he having done so, it was conclusive; and so in the case of *Wilson v. Wilson*, 36 Ala. 655.

9. In further illustration of the distinction as well as of the true principles involved and decided by the courts, we beg further to submit a paragraph from the case of *Hard v. Shipman, supra.* In that case, the supreme court of New York say : " Even in some cases where a jurisdictional question is involved, the judgment of an inferior court is held to conclude the parties. Such cases are where the inferior court is authorized to ascertain and try a jurisdictional fact, and which fact is tried and determined judicially by the court."—6 Bar. 631.

10. It is urged that a party will not be allowed to go out of the record for evidence to establish the facts, such as an interest in or relationship of a judge to a party, that make a judgment of a court null and void. Then, how will a party get the benefit of the protection of section 635 of the Revised Code of Alabama ? A party may not know, and the record seldom shows, either the interest or relationship of the judge. How can it be made to appear ? The question is fully answered by the following cases, amongst many others : 15 N. H. 53 ; 1 Hill, 654 ; 3 Comst. 547 ; 40 Ala. 253. In 40 Ala. 253, the judge, referring to cases in which a party will be allowed to prove matters *dehors,* the record, etc., says : " And in such other cases as may be authorized by long practice, or by statute."

11. At common law, the acts and judgments of a judge who was interested in a suit or case, or of kin to one of the parties to the suit, or party interested in the suit, were voidable only.—*Dimes v. Grand Junction Canal Co. ; Moses v. Julean,* 45 N. H. 54 ; *Claunch v. Castleberry,* 23 Ala. 85 ; *Heydenfeldt v. Towns,* 27 Ala. 430, 431.

12. But if the judge were prohibited by statute from sitting or presiding in such cases as in Alabama, section 635, then his acts and judgments would be absolutely void. *Moses v. Julean,* 45 Ala. 54 ; *Claunch v. Castleberry,* 23 Ala.

85; *Oakley v. Aspinwall*, 3 Comst. 547; *Heydenfeldt v. Towns*, 27 Ala. 430, 431 ; *Place v. B.'s W. and Cotton M. C.*, 28 Bar.

13. Consent, in some cases, will give the court jurisdiction of the person of a party, and in such cases, the party will be estopped from denying the jurisdiction of the court over him. We illustrate thus : If a party against whom suit has been instituted, but upon whom process has not been served, comes into court and enters his appearance, he cannot then deny to the court proper jurisdiction of his person ; he, in that case, will be estopped, because of his own act. Many cases may be referred to in support of this view. And in such case, where service of process has not been effected on a defendant, and he fails to appear, and a judgment is taken against him by default, such judgment is void because the court had not acquired jurisdiction of his person.

14. But if the statute says a judge who is interested in a cause, or is of kin to one of the parties to the suit, shall not sit as judge in said cause, (Rev. Code, § 635,) then there can be no estoppel or waiver by the defendant, that will justify or make it legal for such judge to preside or render judgment in such case. The law says he shall not, and positively forbids him doing so. And in such cases, there can be no waiver by a defendant that will, or by possibility could, make it legal for him to do so. Where there is no inhibition by law, there may in some cases be a waiver ; but if the statute prohibits such action by a judge, it is not a mere question of jurisdiction of the court over the person of a defendant, which the defendant may waive or give, but it is a question of submission and obedience on the part of the judge to a statute of the State, from which a defendant has no power to relieve him. Suppose section 635 of the Code had this addition : That if a judge should violate that section, he should be subjected to a fine and imprisonment. And suppose he were prosecuted for such a violation, could he upon trial defend or justify upon the ground that defendant had consented for him to act, unless such consent be given in pursuance of the statute. No one will so contend. Such proposition is wholly untenable. Now, if that be true, how can it be contended that the same

waiver, or consent that fails to justify a judge for such violation of the statute when prosecuted for it, will so far legalize his conduct and judgment as to make such judgment valid? Such is not the law. The appellant, without least doubt or hesitation, but with great respect to the court, state that in no case where the judge is inhibited by statute from presiding and acting as judge, can the defendant by any consent he may give, (unless such consent is provided for in the statute,) relieve the judge from such inhibition, or make his acts in any wise legal. Where there is a statutory inhibition against the action of the judge, there can be no waiver or estoppel, unless such as may be provided in the statute.—*Moses v. Julean*, 45 N. H. 54; 3 Comstock, *supra.*

" If the facts are known to the party recusing, he is bound to make his objections before issue joined and before the trial is commenced, otherwise he will be deemed to have waived his objection in cases where a statute does not make the proceeding void."—*Adams v. The State*, 6 Eng. 466; *Shropshire v. The State*, 7 Eng. 190; *Moses v. Julean*, 45 N. H. 54.

From the decisions of our own Supreme Court, as well as the supreme courts of other States, the law is now fully and well established that wherever there is a statutory inhibition against a judge acting in certain cases, all of the acts of such judge in violation of such inhibition are absolutely void. It is said in *Moses v. Julean, supra*, that the recusing party is deemed to have waived his objection, " if he knew the facts, and if the action is not inhibited."

In this case, there is no evidence before the court proving, or even tending to prove, that appellant knew anything of the recusing of facts, and this court will presume no such knowledge on his part. Again, the presumed waiver is only in cases where there was no statute prohibiting it. But in Alabama, our statute prohibits a judge acting in certain cases.—Rev. Code, § 635. And our own Supreme Court says if the judge shall act in the prohibited cases, his acts and judgments will be void.—*Chaunch v. Castleberry*, 23 Ala. 85; *Heydenfeldt v. Towns*, 27 Ala. 431. Then we say, with greater confidence, that, as in Alabama we

have an inhibition by statute, (Rev. Code, § 635,) there can be no waiver or presumption of waiver.

15. If the argument be sound that, in cases where there is an inhibition by statute there can be no waiver or estoppel, except as may be provided in and by the inhibiting statute, then it follows that no subsequent conduct or act can amount to a waiver or estoppel.

Again, we have shown it not to be a mere question of jurisdiction of the person, but one of obedience to law, which forbids action in the particular case by the particular judge; and must and can only be relieved in the precise mode pointed out by the statue. We illustrate thus: Suppose there be two or more defendants or parties interested, and one should come into court and enter of record his consent, as is provided in section 635 of the Revised Code, the others neglecting or refusing thus to give and enter their consent. Could the judge, in that case, proceed with and render judgment? Certainly not. We ask, why not? First, because even if it were a mere question of jurisdiction of the person, only one having waived, the others could not and would not be affected thereby, and the court, in such a case, could not act upon their rights. The case before the court is much stronger than the one supposed. In this case many were interested in the sense of the statute, and all of them were required to enter their respective consents of record. The subject matter before the court concerned all, and involved the rights of all interested, and without the consent of all entered of record, the judge could do no act in solving the rights of any. But it is said that, in this case, the consent of all interested was given, and entered of record at the time of administration, and the minute entry is referred to as sustaining that view. Does that entry redeem and meet the demands of the statute? We think not. Our construction of that statute is, that the parties shall, each and all, by name, have his or her consent entered, and let the record show the distinct fact that each and all of them did so. Then, does that fact appear? Has a party whose rights have been disposed of in this case any redress? Does he, or can he, know from that entry, who thus consented? The fact of the consent

of A and B does not appear, but the entry, which is merely by way of a recital, adopts and enters a legal conclusion. 46 Ala. 655, 664, 665 ; " that all interested, requested," &c. We ask, who did the judge determine to be the parties interested, the widow and next of kin, or the creditors in part or in whole, or both together ? We have a right to know who consented, and if they were really not the parties contemplated by the statute, we have a right to know it, and we can only know it from the record ; and if the record does not show the fact, then we say no consent has been entered in the sense and contemplation of the statute.

16. Again, if the judge of probate determined that the widow and children were the proper parties to consent by entry of record, then we say that the entry of record shows that one of the children (Lizzie McDonald) was a minor, and could not thus consent. She had no guardian, either general or guardian *ad litem*, and therefore no one to consent for her. All of these facts are shown by the record, and admttted by the demurrer. It is argued, however, that infancy can plead no avail of it. We regard it as unnecessary to examine the legal soundness of that proposition, for if true, it has no pertinency or application to the case in hand. Infancy, in this case, is not a plea to be pleaded and urged. It is an admitted fact on the record that presents and urges itself. The parties had to consent of record before Judge McClellan could act, and the record must show the consent before the judge can act; but the record shows that one of them could not consent, and had no guardian to consent for her.

17. It is also alleged that at another time subsequent to the grant of administration, (1st day of December, 1866,) the widow and children, the heirs-at-law, gave their written consent, which was recorded in the minutes of said court, as contemplated by section 635. We deny that the consent thus taken and recorded is a compliance with the the law. But suppose we are mistaken in that ? Then we answer that two of the children, heirs-at-law, to-wit: Lizzie McDonald and John McDonald, failed to sign the paper, or in any way connect themselves with that act or transaction ; that Lizzie, as we have already shown, was

an infant without a guardian, and did not and could not consent, and that John McDonald is over twenty-one years of age, and did not consent, and we have a right to insist, and do insist, that he refused to consent. The facts are presented by the record, and admitted by the demurrer; so that the consent thus claimed avails nothing for the appellants, for the foregoing reasons.

18. But the record shows that letters of administration were granted to Hussey on the 8th day of November, 1866, and the consent last referred to was given, if at all, on the first day of December, 1866, weeks after the grant of letters.

19. Suppose, however, we are mistaken, and your Honors should rule that in the grant of administration the widow and children are the proper parties to consent of record, under section 635, and that they have properly done so, then we insist that upon the report of the insolvency the parties to the proceeding change—that the creditors become the parties in interest—and to justify or make valid the action of the probate judge upon said report of insolvency, or any subsequent action of the judge, the creditors must enter the consent required. The widow and children of an intestate have no interest in an insolvent estate, except as to homestead and dower.

Have the creditors, or any of them, thus consented? They have not. They had no knowledge of the existence of the insolvency proceeding, certainly none until after the estate had been declared insolvent by the court, and indeed never had any sufficient legal notice of that proceeding. They were not before the court, and the action of the court touching their rights in that estate is null and void.

20. In the case of *Frierson v. Travis*, 39 Ala. 153, the court, speaking of acquiring jurisdiction over the person in the settlement of a guardian, say: " The statute authorizes the adoption of a certain mode of giving notice, which may be regarded as the equivalent of personal notice. The probate court did not require a compliance with the statute, and it was not complied with, either literally or substantially. Nothing less than the statute has prescribed can be a legal constructive notice.—*Jenkins v. Jenkins*, 16 Ala. 693. The decree must, therefore, be treated as if

rendered without notice to the necessary party." And in the same case, on page 155, the court say : "The decree of the probate court was made in the absence of jurisdiction over the person of the infant, and was therefore void."

WALKER & BRICKELL, S. F. RICE, contra.—The appellants were the actors—the petitioners in the court below, as to the matter here for revision.

The question here is, did the court below err in deciding simply that these actors did not show enough in their petition to entitle them to have all the former proceedings as to the estate of the intestate set aside by the same court in which all the proceedings were had, at a term long after all those proceedings were had ? If that question is decided against these appellants, that closes further inquiry here.

That question must be decided against them upon this undoubted principle, to-wit, that no party to proceedings in a probate court in the matter of the estate of an intestate, of which proceedings the court had jurisdiction, has the right to call upon that court, at a subsequent term, to set aside these proceedings, ( including a report and decree of insolvency,) after they have advanced to that stage and condition in which they operate as a bar to the claim of that very party, unless such party alleges more than is disclosed upon the face of the proceedings themselves and the relationship of the judge to the administrator.—Addison v. Eldridge, 1 Smedes & Marshall's R. 510 ; Smith v. Berry, ib. 321 ; Parker v. Whiting, 6 Howard's (Mississippi) R. 354 ; Chewning v. Peck, ib. 544 ; Hollinger v. Holley, 8 Ala.; Johnson v. Johnson, 40 Ala.

The attack of the proceedings by the petition of appellants, is a collateral attack, and does not authorize the same court in which the proceedings were had to set them aside, at a subsequent term, for "irregularities" which would have worked a reversal on a direct attack by appeal.—Carter v. Waugh, 42 Ala. 452 ; Satcher v. Satcher, 41 Ala. 26.

The only matter not appearing on the face of the assailed proceedings, which is stated in the petition of appellants, is the fact that the judge was related to the

administrator. This new fact, thus alleged, does not render the proceedings void.—*Hall v. Wilson's Heirs*, 14 Ala.; *Heydenfeldt v. Towns*, 27 Ala.

As this single new fact (the relationship of the judge to the administrator,) is not, *by law*, entitled to any effect, it must be treated as expunged from the petition. The case, then, presented by the petition is that of a naked demand by petitioners upon the probate court, to set aside, at a subsequent term, its own proceedings within its clear jurisdiction, at former terms, simply for mere irregularities appearing upon their face! The law gives no countenance to any such demand.

The decree of insolvency is *in rem*, beyond all doubt. The fact that the report of insolvency may lawfully take the form of a proceeding *inter partes*, does not take from it its character of a proceeding *in rem*. This is so forcibly and clearly illustrated in *Deslonde v. Darrington*, 29 Ala. 92, that further argument or citation seems unnecessary. True, the probate of a will was the particular subject there presented. But what is said of the probate of a will, applies equally to a decree of insolvency. The *nature* of the two is the same.

When petitioners assailed by their petition the proceedings of the probate court, those proceedings were in that condition that made them operate as a bar to the claim of petitioners, for more than nine months had then elapsed after the decree of insolvency. This petition is a novel mode of reviving a barred claim against an estate! And it is the more striking, because it comes from those *who are expressly named as creditors of the estate, in the report of insolvency*. Naming them as creditors in that report, coupled with the publication of the notice to those interested, made them *parties to that proceeding;* and they are *thereby concluded.*

B. F. SAFFOLD, J.—The appellant, a creditor, applied to the probate court to set aside and annul the grant of letters of administration on the estate of Jonathan McDonald, deceased, to E. M. Hussey, and all the subsequent orders, decrees and proceedings rendered in the adminis-

tration of the estate, as void, for the reasons set forth in the petition. The error complained of is the judgment of the court sustaining a demurrer to the petition.

The various objections to the proceedings in the administration of the estate may be considered under three heads—1st, The relationship of the judge to the parties; 2d, The decree for the sale of the lands of the intestate; 3d, The decree of insolvency.

The minute entry of the appointment of the administrator, Hussey, dated November 8th, 1866, recites that all the parties in interest requested the probate judge to act, notwithstanding his relationship to Hussey, and declared their wish in writing. The appellant contends that a written consent, signed by the widow and the heirs and distributees of the deceased, dated December 1st, 1866, entered on the minute book, is the consent alluded to in the entry of November 8th, 1866, and is not a compliance with the statute, because two of the heirs, John and Lizzie McDonald, did not sign it, and the latter was a minor.

The statute (Rev. Code, § 635,) did not in this case require the consent of the parties to be put in writing, the court being one of record. As the written consent found in the transcript was not required to be made or entered on the minutes, we can not regard it as a part of the record.

It is further contended for the appellant, that the minor heir could not consent. The general terms of the consent entered of record would not preclude the infant from reversing the action of the court on appeal. A novel feature of this case is, that one who was certainly not a party in interest to the appointment of the administrator is seeking to set it aside against the resistance of the minor, for a reason which is generally the personal privilege of the minor.

The argument is weighty, and the authorities abundant, in support of the proposition that the relationship of the judge to the parties, or his interest in the cause, renders the action of the court *coram non judice*, but they are not conclusive. In *Clanch v. Castleberry*, 23 Ala. 85, construing a statute very similar to the present law, and perhaps

less imperative in its terms, it was held that the action of the court was void, because the judge had been attorney for one of the parties. But in *Heydenfeldt v. Towns*, 27 Ala. 423, the rule is declared to be, that if the judge is deprived of authority to act by statutory inhibition, the proceedings are void; otherwise, they are voidable only, and valid until avoided.

Section 635 of the Revised Code says the judge must not act if he is interested, or related to the parties within the fourth degree of consanguinity or affinity, unless by their consent entered of record. If the provision for consent had not been introduced, there could have been no question about the construction. But the consent giving authority, seems to imply a personal privilege. In *Wilson v. Wilson*, 36 Ala. 655, this court held that the probate judge would be incompetent if he was really a surety on the administrator's bond. But this was on appeal. Section 635 has never been construed except in this last mentioned case, and the law is unsettled in this State.

We think that justice will be best subserved by ruling that the disabilities mentioned in the section (635) render the proceedings of the court voidable only, and not absolutely void. These disqualifications may be unknown, or so obscure as to require a judicial decision to determine their existence. It is a serious thing to annul the judgments of courts, and it ought not to be done where the consent of the parties alone is requisite to their validity, and its entry on the record is the only admissible evidence that it was given.

The order to sell the lands of the intestate recites the application of the administrator, alleging the necessity of a sale to pay debts, and proof was taken by deposition as in chancery cases. The jurisdiction of the court attached, and its action is conclusive until reversed, no matter what may be the errors and irregularities of the proceedings. Shepherd's Dig., *Decrees*, p. 136, § 6; Rev. Code, § 2225; *Satcher v. Satcher's Adm'r*, 41 Ala.

Proceedings in the probate court to declare an estate insolvent, are *in rem*. The jurisdiction attaches on the report of the administrator.—*Clarke v. West*, 5 Ala. 117.

Previous to 1843, the mere report of an executor or administrator that the estate he represented was insolvent, was sufficient to authorize the orphan's court to administer it as such.—*Black's Cred. v. Black's Adm'rs,* 20 Ala. 401. The omission of assets in the report is no ground for even dismissing the report and petition, unless those discovered are sufficient to show that the estate is solvent.—*Raines' Adm'r v. Raines' Cred.,* 30 Ala. 425. The decree of insolvency is somewhat interlocutory. That an estate is certainly insolvent, can only appear when it is finally closed. The creditors are not otherwise affected than by being remitted to another forum.

It is urged that the decree of insolvency is void, because the third Monday in January, 1868, was appointed to determine the matter, while the notice given stated the third Monday in December, 1867, as the time, and the decree was rendered on the second Monday in January, 1868. The last date was the day of a regular term of the court. Rev. Code, § 795. That there was gross irregularity and negligence in this matter, is evident, but the decree was rendered on a proper report of insolvency, and is not void. The appellant was not without remedy. He had the right of appeal, and a resort to chancery to correct any error of law or fact in the settlement of the estate.—Revised Code, § 2274.

The judgment is affirmed.

[NOTE BY REPORTER. —The foregoing opinion was delivered at the June term, 1870, and on a subsequent day of the term appellants petitioned for a rehearing. The petition did not come into Reporter's hands. The case was held under advisement until the present term, when the following response was made:]

B. F. SAFFOLD, J.—The propositions asserted in the opinion read in this case are important and new in this State, and for that reason we have given the application for rehearing more than usual attention.

Is the proceeding in the probate court to declare an estate insolvent *in rem* or *in personam ?* The declaration of

insolvency is interlocutory, and if *res adjudicata*, is only so on the simple question of the solvency of the estate. *Walker v. Mock*, 39 Ala. 568. Prior to 1843, creditors were not allowed to dispute the fact of insolvency; and in 1847 this court decided that the decree of insolvency could not be collaterally impeached by a suit against the personal representative for the recovery of a debt due from the estate.—*Edwards v. Gibbs*, 11 Ala. 292. Creditors who have not filed their claims within nine months from the decree of insolvency, but have presented them within eighteen months from the grant of letters of administration, are entitled to be paid, if the estate should ultimately prove to be solvent; and they may show that it is, on the final settlement, by proof of assets not accounted for, with which the administrator is chargeable.—*Middleton's Adm'r v. Maull's Adm'r*, 16 Ala. 479. The probate of a will is a proceeding *in rem*, because it operates upon the thing itself, defining its status.—*Deslonde & James v. Darrington's Heirs*, 29 Ala. 95. Yet the widow and next of kin are entitled to personal notice.—Rev. Code, § 1951.

A judgment *in rem* is an adjudication pronounced upon the status of some particular subject matter, by a tribunal having competent authority for that purpose. A judgment *in personam* is, in form as well as in substance, between the parties claiming the right; and that it is so *inter partes* appears by the record itself. The judgment *in rem* is a solemn declaration upon the status of the thing, and, *ipso facto*, renders it what it declares it to be.—2 Smith Lead. Cases, 692, 693.

In the proceeding to declare an estate insolvent, no process is issued against any one, but all persons interested are constructively notified, and the judgment is not that this or that person shall pay a sum of money, or do any particular act, but that the estate is or is not insolvent.

A writ of error does not lie to reverse a decree of insolvency, until a final decree of settlement has been rendered, unless an issue has been made up and tried.—*Black's Cred. v. Black's Adm'rs*, 20 Ala. 401; Rev. Code, § 2183–06, 2244 (clause 6), 2187.

We think the foregoing authorities sufficient to show

that a decree of insolvency partakes so much of the nature of a judgment *in rem* as to preserve its validity in a proceeding to set it aside as void for want of proper notice to creditors.

For the reasons given in the opinion read in this case, and those contained in the case of *Hayes v. Collier*, at the present term, we still think that proceedings in a cause before a judge disqualified to sit by section 635 of the Revised Code are voidable merely, and not void.

The rehearing is denied.