# Traylor & Co. v. Hughes.

### Trover for Conversion of Box of Cigars.

1. *Consignment of goods, with option to purchase; what constitutes conversion.*—A lot of cigars having been forwarded by plaintiffs to defendant, on the agreement that he "could take what he wanted at $35 per thousand," after he had refused to give an unconditional order, he is liable as a purchaser, at the price stipulated. for the portion used or sold by him, but not for a conversion; and on his flight from the city, during the prevalence of an epidemic, a public relief committee having taken possession of his store, and used or wasted the cigars remaining on hand, he can not be held liable as for a conversion of them.

2. *Irregular verdict; sending jury back in absence of counsel.*—When the jury return a verdict which is not responsive to the issues—as, in trover for the conversion of goods, if they return a verdict finding the defendant *indebted* to the plaintiff—the court may refuse to receive it, and send them back under former instructions, to find for the defendant if they believe the evidence, although the plaintiff's attorneys are not in the court-room at the time.

APPEAL from the City Court of Decatur.

Tried before the Hon. A. H. SIMPSON.

This action was brought by Geo. M. Traylor & Co., suing as partners, against T. G. Hughes, to recover damages for the alleged conversion of 5,000 cigars; and was commenced on the 16th April, 1889.    On the trial, as the bill of exception shows, the plaintiffs introduced the defendant himself as a witness, who testified that, some time during the year 1887, one of the plaintiffs, or their agent, came to his store in Decatur, and proposed to sell him a quantity of cigars by wholesale, but he declined to give any order; that the agent said, on leaving, "They would ship the cigars any way, and he could take what he wanted at $35.00 per thousand;" that he received the cigars some time afterwards, and stored them away in his house; that he sold small quantities from time to time, and placed some on sale in other houses, and had thus disposed of about 2,000 when the yellow fever broke out in Decatur, and he left the city; that on learning, a few

[Traylor & Co. v. Hughes.]

days afterwards, that the public Relief Committee had taken possession of his store, he wrote to the physician in charge, asking him to protect his property as well as he could; and that said physician, after his return to the city, paid over to him the money received on the sale of about 400 cigars. The physician also testified, as a witness for the defendant, that after the committee took possession of the store, "many cigars were carried off by physicians and others, some taking a handful at a time;" that this continued until after he received a letter from defendant, when he placed a boy in charge as clerk, and paid over to the defendant the money afterward received. It was proved that the 5,000 cigars were worth $175, and the defendant admitted an indebtedness of $70 on account of those which he had sold.

The court charged the jury, that they must find for the defendant, if they believed the evidence; to which charge the plaintiffs excepted. The jury soon returned a verdict, finding the defendant *"indebted* to the plaintiffs $70;" but stated to the court "that this was their verdict if they understood the charge of the court." The court refused to receive the verdict, and repeated the former instructions to them; and they then returned a verdict for the defendant. The plaintiffs' counsel was absent from the court-room, when the jury brought in their first verdict, and were sent out again by the court; and they excepted to this action of the court.

WERT & SPEAKE, for appellants.

S. M. BAINS, and W. R. FRANCIS, *contra.*

SOMERVILLE, J.—The evidence set out in the bill of exceptions affords no ground of inference that the defendant was guilty of a conversion of the plaintiffs' goods, such as would render him liable in trover. The property alleged to have been converted was five thousand cigars, which had been shipped by the plaintiffs to defendant some time in the year 1888. The evidence repels any idea of an absolute sale on the one hand, or an unconditional purchase on the other. The contract, however, obviously was, that the plaintiffs would ship the goods to the defendant upon the agreement that he "could take what he wanted at $35.00 per thousand." The receipt of the goods, therefore, made him a bailee, with the option to purchase all, or a portion of them, as he might elect

[Ruse v. Bromberg.]

The evidence shows that the plaintiff elected to take about two thousand of the cigars, and that he packed away the remaining three thousand in his store-house at Decatur. The lot thus stored was appropriated by the public during the yellow fever epidemic, when the defendant was absent from the city, his-store-house, which he left locked, having been occupied by the yellow fever Relief Committee without his consent.

As to the portion of the goods which defendant appropriated, he must be regarded as a purchaser at the price stipulated, under the agreement with the plaintiffs. The taking was a mere exercise of his option to purchase, and must be referred to the consent of the plaintiffs.—*Kinney v. South & North Ala. R. R. Co.*, 82 Ala. 368.

As to the remainder of the goods, taken by the public without the knowledge or consent of the defendant, there was clearly no conversion on his part. He was a mere bailee as to this part of the property, and, being without complicity in the act of intermeddling or appropriation by strangers, he was not responsible in trover.—*Abraham v. Nunn*, 42 Ala. 51; *Thweat v. Stamps*, 67 Ala. 96.

The judge of the City Court did not err in giving the general affirmative charge in favor of the defendant.

The verdict first returned by the jury was not responsive to the issues to be tried, and was unauthorized by law. The court did not err in refusing to receive it, or in repeating to the jury its former instructions, in order that they might again retire and make a finding according to law. And this is true, although the counsel of the plaintiff were, at the time, absent from the court-room. There was nothing in this conduct of the court out of the usual practice in *nisi prius* trials.

The judgment is, accordingly, affirmed.