## THOMPSON *vs.* THE STATE.

[INDICTMENT FOR POLYGAMY.]

1. *Dissolubility of marriage contract.*—The English doctrine, that the dissolubility of the marriage contract depends upon the law of the country in which it

was solemnized, is founded on the doctrine of perpetual allegiance, is therefore inconsistent with the spirit of our institutions, and is here repudiated.

2. *Jurisdiction of courts of husband's domicile to grant divorce.*—The husband has a right to emigrate and acquire a new domicile, and thereby acquires, as a consequence, the right of having his matrimonial *status* controlled by the laws and judicial tribunals of the country of his new domicile, although his wife remains in the State which he left.

3. *Validity of foreign decree of divorce rendered on publication.*—The general principle, that judgments and decrees, when set up in a different State from that in which they were rendered, may be avoided, when the court had no jurisdiction of the defendant's person and there was no appearance, does not apply to decrees of divorce rendered on publication against non-resident defendants, the validity of which depends on the statutes of the State in which they were rendered, and results necessarily from the existence of the jurisdiction.

4. *Arkansas statutes on subject of divorce construed.*—Under the statutes of Arkansas, as shown in evidence in this case, the fact that the cause of divorce commenced and existed out of that State, and was not continued or completed there, would not render void a decree there obtained by a husband who had resided an entire year in that State.

5. *What would render void foreign decree of divorce.*—A decree of divorce obtained in Arkansas, by a person domiciled in Alabama, would be void, and would constitute no defence to a prosecution in Alabama for polygamy, if the decree was procured by fraud, or if the defendant did not go to Arkansas *animo manendi,* or if he went thither merely for the purpose of obtaining a divorce, and with the intention of remaining no longer than was necessary to accomplish that purpose.

From the Circuit Court of Marion.

Tried before the Hon. Thos. A. Walker.

Indictment for polygamy, charging "that Allen Thompson, before the finding of this indictment, having a wife then living, unlawfully married one Roxanna Wilkerson, against the peace and dignity of the State of Alabama." The defendant excepted to the charge of the court, under which he was convicted, and which is the only matter now assigned for error. All the material facts of the case are stated in the opinion of the court.

Wm. S. Earnest, for the appellant, submitted the case without brief or argument.

M. A. Baldwin, Attorney General, *contra,* contended that the decree of divorce, on which the defence was rested, and which was rendered in Arkansas, on publication against a

non-resident defendant, was void for want of jurisdiction, and therefore constituted no defence to this prosecution ; and cited the following cases : Hanover v. Turner, 14 Mass. 227 ; Barber v. Root, 10 *ib.* 262 ; Borden v. Fitch, 15 Johns. 121 ; Vischer v. Vischer, 12 Barb. (S. C.) R. 60 ; Harrison v. Harrison, 19 Ala. 504 ; Harrison & Saunders v. Harrison, 20 *ib.* 630.

WALKER, J.—The appellant was convicted of polygamy, and sentenced to the penitentiary for two years. The material facts in the case, as set forth in the bill of exceptions, are to the following effect : The appellant was married, in the State of Alabama, in 1838, and in 1848 or 1849 left his wife and two youngest children in an adjoining county in Mississippi, and left ; but returned to Mississippi, and sold out a portion of his property, left some, and carried the remainder with him into Arkansas, where he settled and cultivated a farm. It is inferrible from the bill of exceptions, that his emigration to Arkansas was in 1848 or 1849. When the husband left, the wife went to her father's in Marion county, in this State, and has since resided there. In February, 1853, the appellant returned to Marion county, in Alabama, and married another woman, his wife still living. The defence of the prosecution was based upon a decree for divorce *a vinculo matrimonii*, rendered by the circuit court of Jackson county, in the State of Arkansas, on the 28th May, 1851. The record of the divorce suit shows, that the wife was a defendant ; that she was proceeded against as a non-resident by publication in a newspaper ; that the publication was duly made ; that the application for divorce was predicated upon an alleged abandonment of the applicant in the State of Mississippi, which abandonment continued for one year while he was a citizen of that State ; and also upon the further allegation that he had been a resident of the State of Arkansas for one year next preceding the petition, and that his wife had voluntarily absented herself from his bed and board for the space of two years preceding the application. The decree recites that the publication and non-residence of the wife were shown ; and that it appeared from the bill, which is sworn to, that the husband had been a resident for one year

preceding the suit, and that the defendant had left his bed and board for two years without cause, he having performed all the duties of a husband. Thereupon a divorce *a vinculo matrimonii* is decreed. There was also a decree *pro confesso*, antecedent to the decree final, against the defendant, upon proof of the publication and non-residence.

Extracts from the constitution and laws of the State of Arkansas were read ; and it was proved that the appellant's first wife had never been in the State of Arkansas, and had no notice of, and made no defence to, the proceedings for a divorce there.

The above is substantially the proof set out in the bill of exceptions, but it does not appear whether there was other proof in the case or not.

The court gave a charge to the jury in the following words : " If the jury believe from the evidence that the defendant was married to Gracy D. Smith in Alabama, and removed to an adjoining county in Mississippi, and, while living in Mississippi, left his family, and went to the State of Arkansas, and there resided one year, and then instituted a suit in Arkansas for divorce against his wife, who never resided in Arkansas, and never had personal notice of the exhibition of the suit ; and further believe from the evidence that the cause of divorce commenced and existed beyond the State of Arkansas, and never was continued or completed within the State, then the divorce obtained by the defendant in the State of Arkansas was invalid and void, being in *fraudem legis* of the State where the parties were married and had their domicile."

This charge was excepted to, and the entire case in this court depends upon the question of its correctness. It asserts that the invalidity of the *Arkansas* divorce would result from several concurring circumstances. If any one or more of those circumstances was conclusive against the validity of the decree, the charge was not erroneous. The defendant could not complain that the court had, by adding unnecessary conditions, increased the difficulty of proving that the divorce was void. It therefore becomes our duty, to examine *seriatim* the legal questions growing out of the charge.

Those questions may be thus stated : 1st. What effect upon the validity of the divorce have the facts, that the par-

ties were domiciled at the time of marriage, and were actually married, in a different State from that in which the divorce was granted? 2d. Was the residence of the husband alone in the State of Arkansas, the wife never having been in that State, sufficient to give the court jurisdiction over his matrimonial *status?* 3d. Is the decree of divorce void, when set up in this State in defence of a prosecution for polygamy, because only constructive notice by publication was given to the wife, who continued to reside in the State where the marriage was solemnized? 4th. Do the statutes of Arkansas, which were read in evidence, authorize a divorce for a cause which transpired out of the State, and which was not continued or completed in it?

The English doctrine, that the dissolubility of a marriage depends upon the law of the country where it may have been solemnized, has been generally repudiated by the American courts. That doctrine is founded in the theory of perpetual allegiance, and is inconsistent with the spirit of our institutions, which impose no restraints upon the change of domicile and citizenship. It has given way to the more just and reasonable theory, that the matrimonial *status* of the married pair is subject to the laws of the State in which they may be domiciled. The dissolution of a marriage, solemnized in South Carolina, the laws of which State do not tolerate divorces *a vinculo*, was decreed in this State; the validity of that decree was assailed in this State, and the doctrine that the question of divorce must be governed by the *lex domicilii* was maintained in a conclusive argument by this court. See the decision in the case of Harrison v. Harrison, 19 Ala. 499; see, also, Bishop on Marriage and Divorce, 745 to 761, and cases cited in the notes. Upon the authority of these citations, we decide, that the validity of the divorce obtained in Arkansas is not at all dependent upon the question whether it was warranted by the laws of this State, where the marriage was contracted, and where the parties resided at the time of the marriage.

It has never been decided in this court, whether the jurisdiction of the courts of a State to grant a divorce in favor of one domiciled in that State can be maintained, when the other of the married pair has always been domiciled and has al-

ways resided elsewhere. In the case of Harrison & Saunders v. Harrison, 20 Ala. 644, it is said, that if the husband and wife were domiciled in this State, and the wife should leave the husband, and go into another State, and there obtain a divorce *a vinculo*, it would be void ; but in that very case it is decided, that the domicile of the husband determines that of the wife, and that, in legal contemplation, the husband and wife could not be domiciled in different States. While the application of this principle might deny to the wife the capacity to acquire a new domicile, distinct from that of the husband whom she had left, it interposes no barrier to the acquisition of a domicile by the husband in a different State from that in which the wife might have remained. The purposes of the argument do not require that we should assail or maintain the correctness of the principle, when applied to a suit by the wife for a dissolution of the marriage. It is sufficient to show that the decision in that case is not in the way of the conclusion that the husband who leaves his wife in one State, and emigrates to another, may acquire such a residence in the latter as will give its judicial tribunals jurisdiction over his matrimonial *status*. Both in the case of Harrison v. Harrison, 19 Ala., and Harrison & Saunders v. Harrison, 20 Ala., it is most conclusively proved, that the dissolution of a marriage appertains to the jurisdiction of the court of the country in which the parties are domiciled.

From the principle thus laid down in these two cases, it results, that jurisdiction over the question of divorce must be allowed to the courts of the domicile ; and if the husband has the right to emigrate and acquire a new domicile, which in this country no one will deny, as a consequence he must acquire the right of having his matrimonial *status* controlled by the laws and judicial tribunals of the country of the new domicile.

If the divorce cannot be sought in the acquired domicile of the husband, it could only be sought in the tribunals of the country where the wife might happen to be. Whithersoever the wife might wander, the husband would be compelled to follow, no matter how flagrant her violations of conjugal duty might have been. The obtainment of a divorce would then depend upon the laws of the country where the suit might be brought ; and it would thus be in the wife's power to select the country to be sued in.

Just principles of international amity require that there should be conceded to each State control over the matrimonial condition of its own citizens. The State has a deep concern in marriage, both for its fruits, and its influence upon society. It is unreasonable, therefore, to require a surrender by any State of the control of this subject in reference to its own citizens. No State will surrender it, and the result of its denial by other States would indeed be most disastrous to society. It would follow that a man divorced from his wife, who resided in another State, if he should marry in the State of his domicile, would be the husband of two women ; and his connexion with either would be legitimate or illegitimate, according as he might be in the one State or the other.

Much force must be conceded to the argument, that it is inconsistent with the analogies of the law to dissolve a marriage, when the court granting the divorce has no jurisdiction over the person of the defendant, and no personal notice of the proceeding has been given. Many authorities are to be found which sustain that argument.—Irby v. Wilson, 1 Dev. & Bat. Eq. 568; Borden v. Fitch, 15 Johns.; Vischer v. Vischer, 15 Barbour's S. C. R. 640; 10 Johns. 264; 1 ib. 224; Hanover v. Turner, 14 Mass. 227; Barber v. Root, 10 ib. 262.

All of the above citations, except one, are of New York and Massachusetts decisions. In none of the New York or Massachusetts cases was the validity of the decree for a divorce of another State held void, upon the exclusive ground of a want of notice and jurisdiction over the person of the defendant. In all of them, there was fraud in the procurement of the divorce, and the absence of a *bona fide* residence in the State where the divorce was granted ; and most of the decisions are based upon those grounds alone. We do not controvert the authority of those decisions, so far as they assert that fraud in the procurement of a divorce, or the want of a *bona fide* residence, on the part of the person obtaining it, in the State where it is granted, would render the decree null and void. Thus far they are sustained by reason and the other authorities. But we are of the opinion, that just principles of comity, the preservation of good morals, the peace of society, and the happiness of families, demand the recognition of the authority of the tribunals of any country,

in pursuance to its laws, to grant a divorce in favor of a party in good faith domiciled in that country. This position is well sustained by authority, as well as by reason and on principle. In the case of Harding v. Allen, 9 Greenl. 140, the validity of a divorce, granted upon constructive notice by publication in the gazette, and personal notice served in another State, was passed upon. The divorce was granted in Rhode Island, where the wife resided, and in her favor. The husband had never resided in that State, and the marriage was solemnized in Massachusetts. The validity of the divorce was sustained. In the decision of the case, no effect was conceded to the notice served upon the husband in another State. Such notice was in that, as in all other cases, held of no avail to confer jurisdiction. See 3 Phillipps on Evidence, C. & H.'s notes, 908 and 999, where the authorities are collected.

This decision recognizes marriage, not merely as a contract, but the political *status* or social condition of the parties ; and therefore concludes, that the courts of the country where one of the pair is domiciled has jurisdiction over his person, and over the subject-matter, which is the *status*. This jurisdiction is by the court correctly restricted to the dissolution of the marriage, and cannot be extended to any incidental pecuniary question, or question of alimony. The very principle upon which the jurisdiction is predicated, limits it to the subject of divorce.

This decision of the Maine court has received the distinct approval of Chancellor Kent. In a note to Kent's Commentaries, 2 vol. page 110, in reference to it, the distinguished author says, it places the question "upon the same principles of justice, good morals, and policy, which render a marriage valid by the laws of the place where it is solemnized, valid every where." A decision thus approved and endorsed, is entitled to the highest confidence and respect. The decisions of the courts in several other States, fully sustain that cited from 9 Greenleaf.—Tolen v. Tolen, 2 Blackford; Hull v. Hull, 2 Strobhart's Eq. 174; Mansfield v. McIntyre, 10 Ohio, 27; Cooper v. Cooper, 7 *ib.* 238. See, also, Bishop on Marriage and Divorce, chapter 34; Story's Conflict of Laws, 191, § 236.

The general doctrine is not intended to be denied in this opinion, that decrees and judgments, when attempted to be set up in a different State from that in which they were rendered, may be avoided, where the court had no jurisdiction of the defendant's person, and there was no appearance ; but, in our judgment, that rule does not apply to decrees for a divorce. The jurisdiction over questions of divorce must be maintained, where the party seeking the divorce is domiciled in the country, and the proceedings are consistent with the laws of the State in which the party has his domicile. The right of a court, when authorized by the statute of the State, to proceed against the non-resident defendant by publication, results necessarily from the existence of the jurisdiction. If it cannot proceed on notice of that kind, it cannot proceed at all ; for no other notice can be given, and a denial of the power thus to proceed would be fatal to the jurisdiction.

The fact that the cause of divorce commenced and existed out of the State of Arkansas, and was never continued and completed within that State, would not avoid the decree. One of the statutes of Arkansas given in evidence prohibits the granting of a divorce to one who has not resided a whole year in the State, unless the offence was committed in the State, or while one or both of the parties resided in the State. The prohibition of divorce in this statute is to one who has not resided a whole year in the State, unless the offence was committed in the State, or while one or both of the parties resided in the State. To one who had resided in the State a whole year, there is no restriction of the privilege of divorce to cases where the cause occurred in the State, or while one or both of the parties resided in the State. The charge given is upon the express concession that the defendant had resided in the State a year. The defendant was, therefore, upon the hypothesis of the charge itself, one of the persons to whom the privilege of divorce was by the statute not restricted to causes occurring in the State, or while one or both of the parties resided in the State ; and the court, therefore, could not properly direct the jury, that they might infer the invalidity of the divorce from the fact that the cause of divorce occurred out of the State.

Another Arkansas statute given in evidence confers upon

the court the same jurisdiction, where the cause of divorce commenced out of the State and had been completed in it, as if it had commenced and been completed within the State. We think that the former of the two statutes was designed to confer upon persons who had resided one year in the State the privilege of divorce, no matter whether the cause occurred in or out of the State ; and to deny it to those who had not resided a year in the State, unless the cause occurred in the State, or while one or both of the parties resided in the State. The purpose of the latter statute was, not to take away from him who had resided in the State one year the right of divorce for a cause occurring out of the State, but to extend the ground of divorce in favor of him who had not resided in the State one year, to the case where the cause of divorce occurred out of, but was completed within the State. This construction harmonizes and gives effect to every part of the two statutes. Under these two statutes, in our judgment, the jurisdiction of the Arkansas court over the divorce of one who had resided a year in the State, would not be affected by the fact that the cause of divorce occurred out of the State.

Our conclusion is, that neither all, nor any one or more, of the facts upon which the court authorized the jury to find the divorce void, would render the decree a nullity. The charge was therefore erroneous.

The bill of exceptions does not set out any statute of Arkansas which confers jurisdiction over the subject of divorce upon the circuit court, which rendered the decree. The question is not before us for decision, whether the proof of such a statute was necessary to sustain the defence. The bill of exceptions does not profess to set out all the evidence, and it would not be legitimate for us to infer that such proof, if necessary, was not made. Our only duty is to decide whether there is error in the charge given. The question of the necessity of the proof indicated will probably not arise upon a future trial of the cause, as it may no doubt be easily made.

If the defendant did not go to Arkansas *animo manendi*, or, if he went to that State merely for the purpose of obtaining a divorce, and intending to remain no longer than was necessary to accomplish his purpose, or, if the divorce was procured by fraud, the decree of the Arkansas court would be void,

and the appellant, in marrying. again in this State while his former wife was living, would commit the crime of polygamy.

The judgment of the court below is reversed, and the cause remanded.