# Harold Brothers & Scott *v.* Weaver.

*Bill in Equity for Reformation of Conveyance of Land.*

1. *Statute of limitations, and lapse of time, as bar to relief against mistake.*—The statute of limitations, or lapse of time, will bar equitable relief against mistake, as well as against fraud; the period of the bar being computed from the discovery of the mistake, or the time at which, by the exercise of reasonable diligence, it might have been discovered.

2. *Same.*—In this case, the complainant having been in the peaceable possession of the land intended to be conveyed, from the execution of the conveyance to him, in which the lands were incorrectly described, to the filing of his bill for the correction of the mistake, a period of more than twenty years, and having only recently learned the mistake, from

[Harold Brothers & Scott v. Weaver.]

the assertion of a hostile title and claim by a sub-purchaser from the personal representative of his deceased vendor,—the lapse of time was held no bar to the reformation of the deed.

3. *Correction of mistake by voluntary act of parties; when demand and refusal is necessary.*—A court of equity will not interpose to correct an innocent mistake, capable of full correction by the voluntary act of the parties, unless a demand and refusal to correct it is alleged and proved, or a reasonable excuse is shown for the failure to ask it; but, when the bill shows that the vendor or grantor is dead, and that his only heir is an infant, this excuses the failure to ask such correction, and justifies a resort to a court of equity.

APPEAL from the Chancery Court of Conecuh.

Heard before the Hon. JNO. A. FOSTER.

The record in this case does not show when the original bill was filed, but the subpœnas to answer were issued on the 22d June, 1882; and though an amended bill was also filed, it is nowhere set out, nor does the record show in what particulars the original bill was amended. The bill was filed by George P. Weaver, against the partners composing the firm of Harold Brothers & Scott, and against Jesse Howard, Mrs. Mary Reid, and John H. Jones; the latter being the grandson and only heir at law of Henry Sledge, deceased, and Mrs. Reid being the widow of said Sledge. The bill prayed the reformation of deeds for a tract of land, executed by the said Henry Sledge in his life-time, to the complainant and said Jesse Howard; also, the reformation of another deed, by which said Howard conveyed his interest in the land to the complainant, the cancellation of the conveyances under which Harold Brothers & Scott claimed the land, and an account against them for waste and damages.

The deeds executed by said Sledge and wife to the complainant and said Howard, copies of which were made exhibits to the bill, were each dated August 21st, 1855, and conveyed by quit-claim only, on the recited consideration of ten dollars in hand paid. In the conveyance to the complainant, the land was thus described: "All that part of the *south-west* fourth of the *north-east* quarter of section one (1), in township one (1), range ten (10), that lies west of the Conecuh river, and that the said party of the second part [George P. Weaver] has inclosed with a fence, containing seven acres more or less;" and the land conveyed to Howard was thus described in his deed: "All that part of the *south-west* fourth of the *north-east* quarter of section one (1)," same township and range, "that lies west of the Conecuh river, and that does not lie within the inclosure of George P. Weaver, containing twelve acres, more or less." The deed executed by said Howard and wife to the complainant, a copy of which was also made an exhibit to the bill, was dated September, 1879, and recited the payment of

§65 as its consideration; the lands conveyed by it being described as the north-west quarter of the north-east quarter of said section one (1), "and all that part of the *south-west* quarter of the *north-east* quarter of said section one (1) that lies west of the Conecuh river, containing fifty-two (52) acres, more or less."

The bill alleged, that said Sledge never in fact claimed or owned any interest whatever in the *south-west* quarter of the *north-east* quarter of said section, and was not in possession of any part thereof; but that he sold, and intended to convey to complainant and said Howard, "the *north-west* quarter of the *south-east* quarter of said section, and put them in possession of said land;" that the lands were misdescribed by mistake in the deeds, and that the complainant himself then owned and was in possession of the forty-acre tract described in the deeds. It was alleged, also, that said Sledge put the complainant and Howard in possession of the lands sold and intended to be conveyed, "and your orator has continued in the possession of said land, through himself and said Howard, claiming said lands as his own, from said 21st August, 1855, to the present time, except as hereinafter shown;" that Sledge died in October, 1872, leaving a widow (Mrs. Mary Reid) and an only grandson (John H. Jones, who was still an infant when the bill was filed), as his heirs at law and distributees; that letters of administration on his estate were duly granted to his said widow, who gave bond and qualified, and in May, 1873, acting under authority of a special act of the General Assembly, approved April 23d, 1873, but without a compliance with its terms, she sold all the lands belonging to the estate, including therein by mistake the land previously sold to complainant and Howard; that one R. S. Smith became the purchaser at the sale, but it was never confirmed; that Smith afterwards sold and conveyed to one John Dixon, who sold and conveyed to E. B. Riley, since deceased, who sold and conveyed to Harold Brothers & Scott. It was alleged, also, "that at the time said deeds were executed, by Mary Sledge (now Reid) to R. S. Smith, by said Smith to John Dixon, and by said Dixon to E. B. Riley, your orator and said Howard were in the possession of said lands, and had been for more than twenty years, claiming them as their own, and had actually cleared up a portion of the said piece of land, and had well nigh worn it out by long and continued use; and said vendors or grantors of said land well knew that your orator was claiming said land as his own, and that he and those under whom he claims had been in the actual possession of said lands, claiming them as his own, and exercising acts of ownership, ever since August 21st, 1855; that said Riley, before he ever entered upon said lands, was notified by your orator of his

claim and possession, and also of the claim and possession of said Jesse Howard, but notwithstanding he entered upon said lands, and built a mill thereon, and then conveyed to said Harold Brothers & Scott; and your orator fully notified said Harold Brothers & Scott, before their said purchase from said Riley, or pretended purchase, of his claim to said lands, and that he would institute appropriate proceedings to perfect his title to said lands." The several conveyances under which Harold Brothers & Scott entered are not set out, nor are their dates shown.

A demurrer to the bill was filed by Harold Brothers & Scott, assigning the following (with other) grounds of demurrer: 1st, "because said bill shows that more than twenty years have elapsed since the mistake that is sought to be corrected, and does not show when it was first discovered by complainant, nor that he commenced suit as soon as he could after the discovery of the mistake;" 2d, "because the bill shows that the complainant was fully aware of his rights in 1873, at the time of the purchase by R. S. Smith, and from thence on to the purchase by these defendants, and has yet remained inactive, taking no steps for the enforcement of his rights;" 3d, "because the complainant did not commence his suit within one year after the discovery of the alleged mistake;" 4th, "because the complainant has a complete and adequate remedy at law." The chancellor overruled the demurrer, and his decree is now assigned as error.

J. M. WHITEHEAD, for appellants.

JOHN GAMBLE, contra.

BRICKELL, C. J.—The argument in support of the demurrer is, that as more than twenty years elapsed after the making of the mistake in describing the lands, during which period the complainant and those under whom he claimed had uninterrupted possession of the lands it was intended to convey, the lapse of time is a bar to the reformation of the conveyance. There can be no doubt, that the statute of limitations, or the lapse of time, will operate in a court of equity to bar relief against mistake, as it will operate to bar relief against fraud; and that the period of the bar will be computed from the discovery of the mistake, or the time at which by the exercise of reasonable diligence it could have been discovered.—2 Story Eq. § 1521 n. And it may be admitted, that the long delay in applying for relief is not accounted for in the present case. It may be inferred from the bill, that the complainant was ignorant of, and did not discover the erroneous description of the

[Matthews v. McDade.]

lands, until a short time before the bill was filed. Mere general or inferential averments can not relieve from the consequences of long and unreasonable delay in the assertion of rights.—*James v. James*, 55 Ala. 520. But we are not of opinion, that in the present case the statute of limitations, or the lapse of time, can be invoked as a bar to a correction of the mistake. There has not been, until a very recent period, the assertion of any right hostile to that of the complainant: he has had open, peaceable, and uninterrupted possession of the lands it was intended to convey, until he is clothed with a title upon which he can maintain or defend all legal remedies for the recovery of the lands. There is, however, an error in the muniment of his title, which may embarrass the alienation of the lands; which is calculated to engender a sense of insecurity, and may be a source of unfounded, vexatious litigation. The court can properly intervene for the correction of the mistake, under such circumstances, when it would refuse to intervene, if there had been the assertion of a hostile right, and an adverse possession for a much less period than twenty years.

It is true, as insisted in the argument of appellant's counsel, that equity will not interpose to correct an innocent mistake, capable of full correction by the voluntary act of the parties, unless it is shown by allegation and proof, that, upon application to the proper party, a correction was refused, or a reasonable excuse for the omission to make the application is shown. If the grantor in the conveyance were not dead, and the heir at law, to whom the legal title to the lands has descended, was not an infant, this ground of demurrer to the bill would be well taken. But these facts being true, there is no person in being capable of correcting the mistake, and none to whom the application for that purpose could be made properly.— *Williams v. Mitchell*, 30 Ala. 299.

We do not find that the chancellor erred in overruling the demurrer, and the decree must be affirmed.