**THARP et al. v. JOHNSON et al.**
**(6 Div. 224.)**

Supreme Court of Alabama.   April 25, 1929.

Rehearing Denied June 13, 1929.

Mitchell & Ford, of Hamilton, and J. C. Milner, of Vernon, for appellants.

Ernest Fite and Kelly Fite, both of Hamilton, and Arthur Fite, of Jasper, for appellees.

THOMAS, J. The bill in equity, by appellants, sought sale of lands for division among joint owners.

The answer of respondents denied that complainants had any interest in the lands; that the same were duly claimed and set apart to them as exempt property from the insolvent estate of Allen Thompson, who died November 10, 1887, and that the title vested absolutely in the widow and minor children. And other matters of equitable cognosce are set up by the answer. Evans v. Evans, 213 Ala. 265, 104 So. 515; First National Bank of Tuscaloosa v. Kennedy, 113 Ala. 279, 21 So. 387, 36 L. R. A. 308; Kilgore v. Kilgore, 103 Ala. 614, 15 So. 897; Miles v. Lee, 180 Ala. 439, 61 So. 915.

The right to homestead and exemptions of the widow and minor children was governed by the statutes in force at the date of Mr. Thompson's death (Bodeker v. Tutwiler, 211 Ala. 537, 100 So. 776; McDonald v. Berry, 90 Ala. 464, 7 So. 838; Snell v. Roach, 150 Ala. 469, 43 So. 189; O'Rear v. Jackson, 124 Ala. 298, 26 So. 944; Waters v. Gadsden-Alabama City Land Co., 182 Ala. 284, 62 So. 75) and was to be ascertained under the provisions of the Code of 1876; the Code of 1887 being of force 30 days from the date of the Governor's proclamation on November 25, 1887. The lands *exceeding in area* the exemptions allowed by law, provisions of General Acts of 1884-85, p. 114, amendment 1887 (Laws 1886-87) p. 112, or section 2821 of Code of 1876, have no application. Bodeker v. Tutwiler, supra.

The respective claims of complainants and respondents are thus stated by the trial Court:

"The Complainants claim an interest in the lands involved as heirs or assigns of heirs, of Allen Thompson, who died about Nov. 10, 1887, owning these and other lands. His estate was administered in the Probate Court of Marion County, letters of administration first issuing on March 4, 1889, and on April 4, 1889, these lands were set aside to the widow and minor children, under whom the Defendants claim title by mesne conveyances. It is the contention of the complainants that the title reverted to the heirs of Allen Thompson on the death of the widow in 1926 (all the minors then being of age), and that the lands are now subject to partition. On the other hand, the Defendants contend that, following the allotment and setting aside of the lands to the widow and minors, the title became vested in them absolutely because of the insolvency of the estate, and that the absolute title is now in Defendants. The contention in this respect is, either, that the estate was declared insol-

vent by the Probate Court, or, that the failure to have it declared insolvent was a fraud upon the surviving widow and minor children of Allen Thompson.

"Clearly, the estate of Allen Thompson was, as a matter of fact, insolvent, and before the administration was closed this fact was brought to the knowledge of the administrator and the Probate Judge. Some of the evidence tends to show that a petition was filed by or on behalf of the administrator to have the estate declared insolvent. No such petition appears in the record of the administration; nor is there anything in that record to show that the estate was ever declared insolvent, although the petition to sell certain other lands of the estate to pay debts does contain an averment that the estate was then insolvent. The fact of the insolvency being known to the administrator and the Court, the duty was mandatory on the administrator to report it and on the Court to declare it. If this was not done, why was it not done? Was it a mere oversight? The circumstances, as shown by the evidence, refute such a presumption. * * *

"Allen Thompson had a former wife, by whom he had children and from whom he was divorced before he married the wife who survived him and by whom he also had children, including these minors. Children of this former marriage were, during and as shown by the record of the administration, even as now and as shown by this suit, antagonistic to the claims and rights of the stepmother, the widow, and her minor children. They employed counsel to resist the proceeding to set aside the homestead to the widow and minors, on the ground that this widow was not the lawful wife of their father. It may not be significant, but it is worthy of note as showing, to say the least, the careless manner in which the files of the case in the Probate Court were kept, that it became necessary during this litigation to substitute the appraisement bill, order to appoint appraisers to allot homestead, and the report of commissioners allotting homestead, which were missing from the files. From a ruling of the Probate Court in favor of the widow and minors the case was appealed to the Supreme Court. Thompson et al. v. Thompson et al., 91 Ala. 591, 8 So. 419, 11 L. R. A. 443. Just before or about the time these older children by the former wife instituted their contest the Probate Judge wrote, apparently voluntarily, to the widow, conveying to her a proposition from the older children to settle their differences, by the terms of which it was proposed that she might live on the place (these lands) during her life. Why this proposition, if the estate was not insolvent and a formal declaration of insolvency was not in prospect? Manifestly, it was not the life estate that was being resisted, but the absolute title that would inevitably follow from a declaration of insolvency. The estate did prove to be insolvent. Why was it not so declared? Another circumstance: The widow paid to the attorney for the administrator a fee of $50.00 to conduct the proceedings to have the estate declared insolvent. In acknowledging receipt of this money he wrote her as follows: "'Please accept thanks for the receipt of $50.00. I have filed application in the Probate Court of Marion County to have the estate of Allen Thompson declared insolvent and to decree the sale of the rest of the land for the payment of debts. This will vest in you and the minor children an absolute estate in the exemption set off to you.'

"Evidently, the widow and minors thought and always assumed this had been done, and held and treated the lands as their absolute property. Was it not done? The records are silent. But equity must speak and say that it was, or if not, that the failure to have it done, under all the circumstances, was a fraud upon the widow and minor children."

The lands in question belonged to Allen Thompson at the time of his death and were 300 acres in area. He had two sets of children; the first were all of age; the second were minors who lived on the land with their mother. The estate was administered, at the instance of Mrs. Thompson, by one Bishop who died, and Davis was appointed administrator de bonis non, and, having completed the administration as to assets coming into his hands, was discharged. The record of this administration is in evidence.

The intestate lands consisted of 300 acres; 120 acres thereof were sold by the administrator for payment of debts, and 160 acres set apart as a homestead on due application to his widow and minor children. The petition to sell the lands to pay debts, by Bishop as administrator, made known to the court the insolvency of said estate, saying: "W. T. Bishop, Administrator of the Estate of Allen Thompson, deceased, respectfully represents unto your Honor that the estate of said decedent is insolvent; that there is no personal property of said estate to satisfy the debts of said estate and that it is necessary to sell the land of said estate to pay the debts of said estate." All the heirs of said estate are averred to be of age, except "Henry W. & Alonzo W. Thompson who are minors under twenty-one years of age, of sound mind and resides in Marion County, Ala. Wherefore, your petitioner avers that it is necessary for your Honor to grant an order in the premises, and prays that for the purpose of paying the debts of said estate your Honor will grant an order of sale."

A guardian represented the minors. The interrogatories in support of the petition showed the fact of debts after allowing exemptions to the widow and minor children; that there was not sufficient personal property to pay the debts, and there was a necessity to resort to the sale of the real prop-

erty for such purpose. It was so ordered. The lands were sold for $100, and that sum was applied to and fully expended in the payment of court costs. "The amount of claims against the estate still unpaid (were) about $000.00;" and these facts were specifically indicated in the report and accounts of the administrator. The receipts of Seay and Cantrell were for their pro rata of the amount due them for acting as appraisers in said estate. The final decree makes no reference to the insolvency of said estate and recites that "the assets of said estate the sum of One Hundred Dollars in money and that he has justly expended in and about the costs and charges necessary and incident to the said administration the sum of one hundred dollars, leaving no balance for distribution among the heirs. * * * the amount so collected by above administrator being paid out on the costs and charges necessary and incident to said administration as per vouchers. It is ordered by the Court that said administrator be discharged from further liability on said administration."

It will be noted in passing that in Dickens' Jarndyce v. Jarndyce (Bengough v. Eldridge, 1 Sim. 173, appellate case Cadell v. Palmer), the estate was consumed in payment of the costs as was the case here as to the purchase price of the 120 acres.

The petition of the widow, Roanna Thompson, for letters of administration, recited it was the property of the estate "not set apart by the Code to the widow and minor children" that was to be administered, and it was upon her petition that letters issued to Bishop.

The required inventories were filed, and showed household and kitchen furniture, farm implements, products and stock of limited value and number, that were claimed in large part by the widow as exempt personalty.

Before this inventory of personal property was filed, in February, 1889, the widow petitioned the court to set apart to her and the minor children the 160 acres selected to embrace the homestead and dwelling of decedent, and alleged that she "selects for herself and the said minor children the above described premises as exempt from administration under Section 2840 of the Code of Alabama of 1876, for herself and said minor children, and she therefore prays your Honor to appoint Commissioners under Section 2841 of the Code of Alabama to set apart and allot to her and said minor children the above described premises, as required by law, and to make all such other orders and decrees as may be necessary in the premises." That she recited in that petition the wrong section in the statute under which the claim of exemption was made, the claim within 20 days after grant of letters did not affect that right. Thompson v. Thompson, 91 Ala. 591,

8 So. 419, 11 L. R. A. 443. Such was the decision on appeal taken from the allowance of her claim. The report (of date of March 19, 1889) of appraisers, appointed by the court under her petition, indicated an excess of 120 acres; there was due order (of date of April 4, 1889) to set aside homestead. That report recited: "We set apart and allotted to said Roanna Thompson and said minor children, the premises occupied as a home at the time of the death of said deceased, and described as follows, to-wit: The NE ¼ X Sec. 29, T. 11, R. 15, in Marion County, Ala. We further appraise said premises at the value of Three Hundred Dollars."

Later, on December 8, 1890, the administrator of that estate reported the insolvency thereof, that there were debts; and prayed for a sale of the 120 acres of land not set apart as homestead for the payment of debts. The hearing was set down by the court, depositions taken that showed debts and jurisdictional facts to exist, and the decree that followed granted the right of sale on the fact of insufficient personal estate, and that sale of the real property was necessary to pay debts. The existence of debts and the insufficiency of personal property were necessary to authorize a sale. Banks v. Speers, 97 Ala. 560, 11 So. 841; Powell v. Labry, 210 Ala. 248, 97 So. 707. The balance of the land—the 120 acres—sold for $100; that sale was confirmed by the court and said proceeds fully expended in the payment of the expenses thereof and court costs of the state, leaving the *debts of the estate unpaid.* This fact was to be inferred from or shown by the report to the court by the administrator.

It is further important to note that in the contest of the homestead allowance (Thompson v. Thompson, supra) it was ascertained there was a diminution, spoliation, or loss of a part of the papers in the file and administration of the Thompson estate. And it was the subject of a motion to establish such as were pertinent to the allotment of homestead and exemptions. The court decreed: "And it appearing to the Court that certain papers pertaining to this cause have been lost or destroyed, it is ordered that said papers be substituted on proper proof being made of their existence and character and contents, and by agreement of counsel one day's notice of said substitution and with copies of the papers to be substituted be served on plaintiff's attorney, and on motion defend." The motion on which this decree of substitution was made is shown to have limited that inquiry and decree as follows: " * * * It being made to appear to the Court that the appraisement bill order appointing appraisers to allot Homestead, and report of Commissioners allotting Homestead to widow and minor children, in a cause pending in this Court wherein Robert Thompson et al are contestants against the allot-

ment of Homestead to Roanna Thompson and minor children, have been lost or destroyed, and the defendants alleging that the same are substantial copies of the original papers and the plaintiffs after examining said copies, agreeing to allow them to be filed as the original papers in this cause and to have the same validity as the original papers would have. It is therefore ordered that said appraisement bill order appointing Commissioners to allot Homestead and report of Commissioners allotting homestead to widow and minors, offered be substituted as the original papers, and that they have the same validity and effect as the originals."

The contest of exemptions or homestead on such substituted record was disallowed on August 5, 1889, and affirmed in Thompson v. Thompson, 91 Ala. 591, 8 So. 419, 11 L. R. A. 443.

When the whole record in the probate court and conduct of the proceedings are considered, it is indicated that said estate was insolvent, the money received from proceeds of the sale of the real property was only sufficient to pay the court costs, and was so used, and nothing remained in the hands of the personal representative or court, and certain creditors accepted a pro rata payment from the administrator, shows the estate was known to be, and so treated, as an insolvent estate, though no decree to that effect is found in that file or the minutes of the probate court.

The statute of the time having application (sections 2820, 2821 and 2827, Code of 1876) concludes with the provision that homesteads "may be retained by such widow or by such child or children, until it is ascertained whether the estate is solvent or insolvent, and if the estate is insolvent, it shall vest in them absolutely." Like provisions are contained in section 2543, Code of 1886, and come from Acts 1872-73, §§ 3, 15, pp. 65, 69. See Gen. Acts 1876-77, pp. 35, 43, §§ 9, 26, providing for homestead and exemptions from payment of debts and administrations and abandonment of homestead. Bodeker v. Tutwiler, 211 Ala. 537, 100 So. 776; Fuller v. Whitlock, 99 Ala. 411, 13 So. 80; Beckert v. Whitlock, 83 Ala. 123, 3 So. 545. A judicial ascertainment of insolvency is required to vest the fee in the widow and minor children. Baker v. Keith, 72 Ala. 121; Munchus v. Harris, 69 Ala. 506; McDonald v. Berry, 90 Ala. 467, 7 So. 838; Kilgore v. Kilgore, 103 Ala. 614, 15 So. 897; Smith v. Boutwell, 101 Ala. 373, 13 So. 568; O'Daniel v. Gaynor, 150 Ala. 205, 43 So. 205; Lester v. Stroud, 212 Ala. 635, 103 So. 692; Hames v. Irwin, 214 Ala. 422, 108 So. 253. It is the duty of the personal representative to report the estate as insolvent, when such is the case or he is so satisfied. If there is a fraudulent failure to do so, relief has been granted in equity to the widow and children. O'Daniel v. Gaynor, supra. In Hames v. Irwin, supra, it

was declared that a court of equity may entertain a bill to declare an estate insolvent so as to invest homestead in decedent's widow and minor children within the period of administration and the life of the claims against the estate creating insolvency.

The question of importance, then, is whether of the Thompson estate it was judicially "ascertained" and declared it "is insolvent" either by decree of the probate court, expressly shown, or by the legal presumption now to be indulged from what is expressly shown by the incomplete record of the administration of said estate that was finally closed by the decree of April 11, 1892. The probate court lost all jurisdiction in the premises after final settlement and decree of discharge of the personal representative. Miles v. Lee, 180 Ala. 439, 61 So. 915; Hynes v. Underwood, 191 Ala. 90, 67 So. 994; Evans v. Evans, 213 Ala. 265, 104 So. 515; Keenum v. Dodson, 212 Ala. 146, 102 So. 230. Such proceedings as may have been later had were of equitable cognizance. Evans v. Evans, 213 Ala. 265, 104 So. 515.

It is certain from the foregoing proceedings in the probate court, reciting and treating the estate as insolvent, that the widow was led to believe, and was warranted in the belief, that she, for herself and the minor children, held the homestead set apart to them as vesting the fee. This belief or assurance is confirmed by the testimony of Mr. Key, the attorney for the widow, that claims were filed against the estate (and it was only on such proof that the decree for sale of lands could have rested). Such insolvency was known and reported by the administrator to the court. These parties are shown to have known that the estate was insolvent, and said attorney prepared and filed the report showing its insolvency. His letter of January 16, 1891—from Key to Mrs. Thompson—was: "Dear Madam: Please accept thanks for the receipt of $50.00. I have filed application in the Probate Court of Marion County to have the estate of Allen Thompson declared insolvent and to decree the sale of the rest of the land for the payment of debts. This will vest in you and the minor children an absolute estate in the exemption set off to you." No such petition is shown by the record other than that of the administrator.

It is presumed that certain public officials discharge their duties in cases where such presumption may be indulged, and in the absence of evidence to the contrary. This court has indulged the presumption that a school trustee issued the certificate of purchase to parties giving notes for school lands, Barry v. Stephens, 176 Ala. 93, 57 So. 467; that the sheriff did his duty in making a levy under execution, Smith v. Heineman, 118 Ala. 195, 24 So. 364, 72 Am. St. Rep. 150; that such official executed deed to land sold by him, and that such purchaser received the

conveyance, Coulson v. Scott, 167 Ala. 606, 52 So. 436. It was presumed that the probate judge performed his duty of publishing the poll list in only one newspaper of his county, Deal v. Houston County, 201 Ala. 431, 78 So. 809; that after a lapse of 20 years there arose the presumption that the executor conveyed trust property as directed by the instrument creating the trust. Kidd v. Cruse, 200 Ala. 293, 76 So. 59; that after a lapse of more than thirty years from date of assignee's deed in bankruptcy, and his discharge by the court, the presumption was indulged that the lands of the bankrupt were duly assigned and order of sale thereof duly made. In Lacey et al. v. Southern Mineral. L. Co., 180 Ala. 57, 62, 60 So. 283, 284, it was said: "These proceedings, as shown by the papers therein, have passed, because of the elapsing of so many years, into the category of the ancient. Of such matters it was said in Baucum v. George, 65 Ala. 259, 266: 'When a record, or an office paper, 'is lost or destroyed, if its former existence is satisfactorily shown, secondary evidence of its contents will be received. Sometimes existence and contents may be presumed, if the record is ancient; but in all cases it is, like other documents, the subject of secondary evidence of the highest grade the party can produce.' The assignee and the bankrupt, and probably all others immediately concerned in the bankruptcy proceedings, are dead. The papers therein were not recorded. It would seem difficult, if not impossible, to adduce a higher character of evidence of the fact of assignment and order of sale than the recitals found in the deed from the assignee to Nabors."

In Foshee v. Kay, 197 Ala. 157, 72 So. 391, it was presumed that the order or decree by the probate judge in proceedings for the formation of municipal incorporation—judicial in character—that it was "assumed that they were made at the proper time, the contrary not appearing," and were "referable to the date immediately preceding the same." And in 1861 a decree for divorce was not effective until ratified by the Legislature—this ratification was presumed after 20 years from the decree. Wilson v. Holt, 83 Ala. 528, 3 So. 321, 3 Am. St. Rep. 768. And in O'Daniel v. Gaynor, 150 Ala. 205, 211, 43 So. 205, 207, is the declaration: The court has not "treated as done any judicial act, however meritorious the circumstances."

In Munchus v. Harris, 69 Ala. 506, is contained the observation that there may be cases of collusion, or such gross dereliction of duty on the part of an administrator, so closely allied to fraud as would, on proper averment and proof, take a case out of the operation of this rule (that requiring insolvency to be judicially ascertained), and dispense with the necessity of an actual declaration of insolvency. In Hames v. Irwin, 214 Ala. 424, 108 So. 255, is the expression, "con-trivance to defeat an adjudication of insolvency would be a fraud upon the law," and the declaration that there was "neither allegation nor proof of any contrivance with that end in view." In Kilgore v. Kilgore, 103 Ala. 614, 620, 15 So. 897, 899, it was declared that, under the statute then of force, a decree of insolvency merely ascertained the status of the estate between the personal representative and the creditor, and was res inter alios acta as to the next of kin; that the complaint in the bill was to set aside the conveyance as a cloud and have the lands sold for partition; that said complainants were "not estopped by said decree of insolvency, set up such a state of facts as show that a fraud was practiced by the widow of said Kilgore and his administrator, in the rendition and procurement of said decree of insolvency,—the one in pretending to be a creditor and the other admitting that fact, which, as shown, was known by each of them to be an incorrect claim, thus imposing on the court which rendered it. If these averments are true, the court of chancery has jurisdiction of this case, to establish and quiet complainants' title to the land, and to this end, to annul said decree of insolvency and sweep it out of the way of the claim of complainants below for partition of said homestead lands, and a sale of them for that purpose, on the ground, as alleged, that they can not be equitably divided in kind."

In the case of O'Daniel v. Gaynor, 150 Ala. 205, 43 So. 205, this bill by the widow alleged that no report of insolvency had been filed, and that there had been no adjudication of insolvency, and that the estate was insolvent and it was the duty of the administrator to so report and have a decree of insolvency declared; that the administrator was the confidential adviser of complainant; that she was ignorant of the law and her rights to homestead and what was necessary to protect her interest therein, kept the estate open and unsettled until the claims against the estate were barred; held that the court could not presume that a decree of insolvency was rendered, where the record showed that no such report and decree of insolvency was in fact rendered. In the case before us the record is, or was, incomplete by reason of lost or misplaced documents. Some of them were substituted by order of the court; the insolvency existed and was duly reported to the court; petition for sale of land to pay debts was granted, and only sold and confirmed by that court for a sum equal to court costs, and debts were not paid; part of the debts are shown to have been prorated as paid; that the widow and minor children were relying upon the administrator and the court to perfect their exemption rights and had the right to believe that all necessary orders were entered, perfecting their homestead and investing in them the fee. However, this record fails to

disclose whether, as a fact, the court entered the decree of insolvency as required by section 2559, Code of 1876.

Will the law presume, under this record shown at one time to have been incomplete, that the probate judge did his duty in the premises? By section 2549 et seq., Code of 1876 (section 2223, Code of 1886), the personal representative must file with the judge of probate, when he is satisfied that the property of the estate is insufficient to pay the debts, a report in writing of such fact or belief. Such report was filed in December, 1890, proof was taken showing debts, and there was a decree of the sale of the lands. This is conclusive that there were debts and that the land was sold for the payment thereof. The report required of the administrator was made and is shown by the record; the decree of insolvency was petitioned for. The mandatory provisions of the statute required the judge of probate, upon such report, to give notice to creditors of a day for that hearing, section 2553; provided that any creditor may make an "issue of insolvency" which may be tried by the court if no jury is demanded, section 2555, Code of 1876. In the event of no contest by a creditor, it was made *mandatory* upon the court to "declare the estate insolvent" and to order the executor or administrator to "make a settlement of his accounts." Sections 2559, 2560, Code.

It is held that jurisdiction attaches on the filing of the report of insolvency. Hine v. Hussey, 45 Ala. 496; Hayes v. Collier, 47 Ala. 726. And to the end in question no one can invoke that jurisdiction in the probate court except the administrator. Byrd v. Jones, 84 Ala. 336, 4 So. 375; Thompson v. Thompson, 91 Ala. 591, 8 So. 419, 11 L. R. A. 443. And until the proceeding becomes inter partes by intervention of creditors in the contest, it is a proceeding in rem. Hine v. Hussey, 45 Ala. 496; Lyons v. Hamner, 84 Ala. 197, 4 So. 26, 5 Am. St. Rep. 363; Cantelou v. Whitley, 85 Ala. 247, 4 So. 610. The right of the widow to proceed in chancery was recognized in Medley v. Shipes, 177 Ala. 94, 58 So. 304; O'Daniel v. Gaynor, 150 Ala. 205, 43 So. 205; Julian v. Woolbert, 202 Ala. 530, 533, 81 So. 32. In the instant case there was no contest by any creditor or party at interest, and it became the mandatory duty of the court to adjudge the estate insolvent. The law presumes that he performed this ministerial duty; and, in the presence of this incomplete record and the evidence before us, the court will presume that all ministerial duties were performed. Under the statute the issue of insolvency was instituted. And no such contest was made to the suggestion and report of insolvency.

We have adverted to the condition of the record, or files in the probate court; that a part thereof had been lost or destroyed at and during a portion of the time of the administration. There was an administration in chief, and that of administrator de bonis non and the allowance of allotment of homestead was contested. To illustrate, in issue of the contest of exemptions alone, was the motion and order of substitution of the lost documents pertinent to the trial of right of Mrs. Thompson as the widow of intestate, and that of her minor children to homestead? The lost papers made the subject of that motion to substitute were "appraisement bill, order appointing appraisers to allot homestead, and report of commission allotting homestead to the widow and minor children," and were allowed and substituted by the undated order of the court recorded in records "Probate Minutes, Vol. 1, p. 320." This case was appealed and is reported as Thompson v. Thompson, 91 Ala. 591, 8 So. 419, 11 L. R. A. 443. Thus it was ascertained and declared of that time, that the file and record in the matter of the Thompson estate were incomplete, lost, destroyed, or spoliated. It is not shown that other papers of that estate were or were not in the file. Papers not necessary to the exception to or contest of allowance of homestead and exemptions were not the subject of the motion to substitute other lost documents of that file, though such documents may have been missing therefrom. The order of substitution being necessarily confined to the objects and purposes of the motion, the whole record tends to show its diminution in other respects, as indicated, of proceedings as to the insolvency of the estate.

It must then be assumed that the record is incomplete or insufficient in the failure to show that a decree or adjudication of the insolvency of said estate was entered, though the insolvency of the estate was reported and shown. The court must presume that the mandatory, official, and ministerial duties of the court were performed.

It may be presumed under the status of force, and the facts before us, that, when the estate was reported by the administrator to the court as insolvent, such report was duly noted and set down for a hearing after notices required by sections 2553–2554, Code of 1876; it will be presumed, after such a lapse of time and condition of the record at this time, that, if there was a contest, it was duly heard, and that action was taken as required by statute. Section 2559, Code of 1876. The only necessary parties, under these old statutes, are the creditors and personal representative. Eubank v. Clark, 78 Ala. 73, 80; Wright v. Dunklin, 83 Ala. 317, 3 So. 597; Julian v. Woolbert, 202 Ala. 530, 81 So. 32. And after the decree required to be rendered, certain of the proceedings indicated by statute as requiring settlement in 60 days, election of an administrator, revocation of former letter, etc., were held directory in the given case, where creditors do not

attend, or, if from any other cause, no appointment of such administrator is made, the court continues the former executor or administrator. Clay, Adm'r, v. Gurley, Adm'r, 62 Ala. 14, 23.

If there was no contest of the report of insolvency, the proceeding is in rem, and jurisdiction attached on filing the report of the administrator, Hine v. Hussey, 45 Ala. 496, and the mandatory provisions of the statute require that, "if no creditor contests the correctness of the report, or, if the issue is decided against him, the *court must declare* the estate insolvent. Sections 2559, 2560, Code of 1875; section 2230, Code of 1886. May it be presumed that such mandatory duty—as the rendition and entry of the decree of insolvency—was performed by the probate court? In O'Daniel v. Gaynor, 150 Ala. 205, 211, 43 So. 205, 207, it was said: "A rather diligent search has not rewarded us with any instance where equity has regarded and treated as done any judicial act, however meritorious the circumstances. However virulent may have been the fraud of the administrator, such fraud certainly cannot afford ground or reason to treat and regard as passed a decree of insolvency when in deed and fact such decree was not entered."

In the incomplete condition of the record, and in view of the mandatory provisions of the statute, can we say that such decree was not entered? However this may be, under the averred facts and the evidence, the failure thereof amounts in law, in a court of equity, to "a contrivance" with the effect of a fraud in law that defeated the "adjudication of insolvency." Hames v. Irwin, 214 Ala. 422, 424, 108 So. 253. And such result will not be enforced or rewarded in a court of equity. In Munchus v. Harris, 69 Ala. 506, the bill was by the widow for contract of purchase by the deceased husband of the homestead; declared there must have been the judicial ascertainment of insolvency; yet there may be a case of collusion, or such gross dereliction of duty on the part of an administrator so closely allied to fraud, "as would, on proper averment and proof, take a case out of the operation of this rule, and dispense with the necessity of an actual declaration of insolvency." In Kilgore v. Kilgore, 103 Ala. 614, 620, 621, 15 So. 897, 899, where the estate was reported insolvent to aid the widow and minors, and in fraud of the reversionary rights of other adult distributees, who were complainants, to have deed from said widow canceled and the lands sold for partition, the court said: "The complainants in the bill, not estopped by said decree of insolvency, set up such a state of facts as show that a fraud was practiced by the widow of said Kilgore and his administrator, in the rendition and procurement of said decree of insolvency,— the one in pretending to be a creditor and the

other admitting that fact, which, as shown, was known by each of them to be an incorrect claim, thus imposing on the court which rendered it. If these averments are true, the court of chancery has jurisdiction of this case, to establish and quiet complainants' title to the land, and to this end, to annul said decree of insolvency and sweep it out of the way of the claim of complainants below for partition of said homestead lands, and a sale of them for that purpose, on the ground, as alleged, that they can not be equitably divided in kind."

And in Hames v. Irwin, 214 Ala. 424, 108 So. 253, a contrivance to defeat an adjudication of insolvency would be a fraud upon the law, but held that there was neither allegation nor proof of any contrivance with that end in view.

When the whole of the file of the administration and minutes of the probate court are considered under the pleading and other evidence, it is apparent that the estate was treated as insolvent. This is shown by the report of the administrator to the court, in the payment of a pro rata part of some debts, in the payment of the costs in full, the failure to show payment of other debts shown to have existed, and in the decree of the discharge of the general administrator on payment of court costs merely, without showing a special administration as to the general debts, as provided by statute. One of the adult heirs of the estate investigated said phase of the case, at the time or immediately thereafter, and was informed by the administrator and the judge of probate that the estate was insolvent and was so dealt with, and that the title was invested in fee in the widow and her minor children by the homestead allotment. Upon this information and assurance parts of the land were purchased and valuable improvements placed thereon. The widow and her children had the right to assume, believe, and assert that they were invested with the absolute title, and to deprive them thereof would be unjust, and will not be sanctioned in this procedure.

This phase of the evidence was adverted to by the trial court in the decree heretofore quoted, from which appeal is taken.

Resting upon the assurance of fact, which she had been given and had the right to assume, the widow and minors held possession of the lands until the latter became of age and sold parts of it from time to time; and she and they, and successors in interest, these defendants, held undisputed, actual, open, and undisturbed possession until this date.

There can be no question of laches defeating their rights or the rights of the defendants. Complainants' counsel have not raised the question of laches for the reason that equitable doctrine does not run against a party in peaceable possession under an equitable claim of title. Ogletree v. Rainer, 152

Ala. 467, 44 So. 565; Torrent Fire Engine Co. No. 5 v. City of Mobile, 101 Ala. 559, 14 So. 557. And actual possession is notice to all of the possessor's equitable rights, and he needs only to assert them when he may find occasion to do so. Harold v. Weaver, 72 Ala. 373.

Under the pleading, evidence, and record, and the authorities I have cited, it is the duty of this court to treat the estate of Allen Thompson (if not judicially declared insolvent) as if the failure to have done so by the court, no creditor having intervened to contest, as a fraud upon the statutory rights of the widow and minors, and in a court of equity as if the legal title had vested absolutely in them. And the same rights and equity with which the widow and her said children were armed were never lost so long as they held and claimed the absolute possession of the land, and such equitable rights inuring to these defendants and their successors are not shown to have ever been waived or lost.

To advert again to the Kilgore Case, supra, the fraud was practiced by the widow and administrator against the adult heirs. The Supreme Court held in equity that the court had jurisdiction to deal with the fraud years after administration was closed, and to fix the true status as between the children and grandchildren of decedent Kilgore; and declare the true title as it would have been vested and declared if the fraud in law had not been practiced. In the present case the fraud (if no adjudication of insolvency resulted in law against the widow and the minor children, and at a time when she was being led to believe that all such proceedings would be had, and were had that were essential to have the estate adjudicated insolvent and vest absolute title in her and the minors, to the homestead, and so held the same for many years. And her and their holding was justified under the record and facts as that of the absolute owner. The decree should be affirmed and the old matters closed. Thompson v. State, 28 Ala. 12. The other justices do not agree to affirmance on the foregoing grounds.

All the justices agree, however, that when the widow and the two minors, attaining their majority, having sold and conveyed the land and delivered the possession to purchasers as such, such action amounted to an abandonment of the homestead rights and estate of the widow; and that the rule of repose applies. The writer concurs.

In Bodeker v. Tutwiler, 211 Ala. 537, 100 So. 776; Smith Lumber Co. v. Garry, 202 Ala. 473, 80 So. 857; Trapp v. First Nat. Bank, 217 Ala. 587, 117 So. 197, are construction of the homestead statutes of 1877.

It was provided by the statute having application (Act February, 1877 [Acts 1876–77] p. 43, § 26) of the estate or property exempt from *administration* or *sale* for the payment of debts that, "when a person has a right of homestead under this act, or any other act relating to exemptions, a temporary quitting or leasing the same for a period of not more than twelve months at any one time shall not be deemed to be an abandonment" of it as the homestead. This provision found place as section 2843 of the Code of 1876. In Scaife v. Argall, 74 Ala. 473, 475, Judge Stone said of this statute that a leasing of the premises for a period of more than 12 months at any one time, and the owner removes from it, there would be a cessation of his "occupancy"—"they being all the while in the occupancy of a tenant, or succession of tenants, holding in rightful possession, then the right of exemption is lost," and that the loss of the right "must date from the time the owner, by his contract of letting, puts it out of his power to return and re-occupy," * * * "the right to homestead is conferred to protect the roof that shelters, and cannot be converted into a shield of investments in lands," etc. Boyle v. Shulman, 59 Ala. 566.

The question of abandonment by a conveyance of a homestead right that accrued under the provisions of the Code of 1876 was recently considered in Smith Lumber Co. v. Garry, 202 Ala. 473, 80 So. 857, by Mr. Justice Somerville, to the effect that "any leasing and transfer of the possession of the homestead to another whereby the owner was disabled for a term from returning and occupying it at pleasure was per se an abandonment of the homestead right."

The right of exemption that accrued to the widow and minor children is "to be determined by the law in force at the time of the death of" Allen Thompson (Bodeker v. Tutwiler, 211 Ala. 537, 100 So. 776; Bailes v. Daly, 146 Ala. 628, 40 So. 420), whose estate was not declared insolvent by the probate court. Their right existed, as to the minor children only during minority (Cofer v. Scroggins, 98 Ala. 343, 13 So. 115, 39 Am. St. Rep. 54), and as to the widow until she abandoned the same, or, if she personally retained it, it protected her until the time of her death. And such right of enjoyment and protection that vested in the widow and minor children, on the death of Mr. Thompson, was not the subject of lease for more than 12 months, section 2843, Code of 1876, and not the subject of incumbrance, sale or conveyance. Barber v. Williams, 74 Ala. 331, 334; Bodeker v. Tutwiler; Scaife v. Argall; Boyle v. Shulman, supra. In Barber v. Williams, supra, Mr. Chief Justice Brickell said: "The abandonment works a destruction of her privileges; and as she has no power of alienation, if she does alien it, like the alienation of her right of dower before assignment, the descent to the heir in not thereby interrupted, and he may maintain ejectment against her alienee, or those entering under him."

And in Chavers v. Mayo, 202 Ala. 128, 131,

79 So. 594, 597, it is. declared: "Right of homestead exemption where the fee is not taken under the statutes is the right of the widow to remain in the occupancy of the homestead of the deceased husband during her life; and if ·by her alienation to third persons she abandons the right of homestead, the heir is given right to the immediate possession and right of action. Gilbert v. Pinkston, 167 Ala. 490, 493, 52 So. 442, 140 Am. St. Rep. 89; Munchus v. Harris, 69 Ala. 506, 509; Baker v. Keith, 72 Ala. 121."

Such were the decisions prior and after the amendment (section 2539, Code of 1886; Code of 1907, § 4192; Code of 1923, § 7914) section 2843 of the Code of 1876, providing for the filing of a declaration of intention to hold the homestead; any transfer of the possession or leasing of the homestead to another whereby the owner was disabled for a term from returning and occupying at pleasure was per se an abandonment of the homestead right. Trapp v. First National Bank, 217 Ala. 587, 117 So. 197; Smith Lumber Co. v. Garry, 202 Ala. 473, 80 So. 857; Stow v. Lillie, 63 Ala. 257; Boyle v. Shulman, 59 Ala. 566. And the amendment only prevented abandonment by the filing in the probate office the required declaration of intention. There is no declaration-claim shown by the record or asserted by counsel that "the land shall remain subject to the same right of homestead as if" the party entitled thereto "had continued in the actual occupancy thereof," Code of 1876, § 2843; Code of 1886, §§ 2539-2540; nor was the same filed in the office of the judge of probate; said act of the widow should "not operate an abandonment thereof or render it subject to levy and sale." In its absence, and the expiration of minority of Henry W. Thompson and Alonzo W. Thompson, the conveyances of the homestead as the protecting "roof that shelters" were an abandonment.

The act and conveyance of the widow gave a right of ejectment to the other children of Allen Thompson, deceased, and the peaceable possession of O. M. Thompson and his successor under claim of title, which has existed and been maintained for more than 20 years, is now protected under the rule of repose as against the heirs of Allen Thompson, or the descendants thereof who are complainants to this bill in equity. Trapp v. First Nat. Bank, 217 Ala. 587, 117 So. 197; Bodeker v. Tutwiler, 211 Ala. 537, 100 So. 776; Miles v. Miles, 211 Ala. 26, 99 So. 187.

The widow of Allen Thompson, deceased, conveyed to the Wrights in 1899, and they conveyed to O. M. Thompson in 1902; and the minors became of age, and they and other brothers conveyed to O. M. Thompson in 1898. O. 'M. Thompson respectively conveyed these lands in several tracts: 50 acres to A. Thompson, September 26, 1901; 55 acres to Briggs F. Thompson in August or September, 1901; and said grantees, heirs at law, sold to defendant W. J. Johnson in 1911, who moved ·thereon and improved in 1913; and O. M. Thompson sold the remaining 55 acres to defendant Jim Cantrell in 1901. These grantees and their predecessors in title remained in the continuous, adverse, and uninterrupted possession of their respective lands until the bill ·was filed February 21, 1927, and thereafter. The rule of repose has intervened (Laird v. Columbia Loan & Investment Co., 216 Ala. 619, 114 So. 208; Ray v. Farrow, 211 Ala. 445, 100 So. 868; Huey v. Brock, 207 Ala. 174, 92 So. 904; Woodstock v. Fullenwider, 87 Ala. 584, 6 So. 197, 13 Am. St. Rep. 73) and closed the ancient controversies of the parties or·their ancestors. See Thompson v. State, 28 Ala. 12.

The presumption of title arises in support of a peaceable possession under claim of title for 20 years. Franklin v. Snow, 195 Ala. 569, 71 So. 93; Birmingham F. Co. v. Boshell, 190 Ala. 597, 67 So. 403.

The result of the decree denying relief to complainants and dismissing the bill is joined in by all of the other Justices, and in which result of affirmance the writer concurs.

Affirmed.

· All the Justices concur.